[No. A050039. First Dist., Div. One. Apr. 12, 1991.]

THE PEOPLE, Plaintiff and Respondent, v.
JOSEPH LEWIS, Defendant and Appellant.

262

**COUNSEL**

Susan D. Shors and Karen Kelly, under appointments by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Morris Beatus and Herbert F. Wilkinson, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**DOSSEE, J.**—A defendant convicted of robbery, false imprisonment, forcible rape with great bodily injury, and unlawful vehicle taking contends on appeal that the trial court erred in imposing a full consecutive prison term for the rape.

### PROCEDURAL HISTORY

A jury found defendant guilty of robbery (Pen. Code, § 211),[1] false imprisonment (§ 236), forcible rape with great bodily injury (§§ 261, subd. (2), 12022.8), and unlawful vehicle taking (Veh. Code, 10851). The jury found weapon use allegations charged in connection with the robbery, the false imprisonment, and the rape not true. Defendant was sentenced to serve fifteen years, four months in state prison, calculated as follows: three years for robbery, eight months for false imprisonment, six years for rape, eight months for unlawful vehicle taking, and a five-year enhancement for the infliction of great bodily injury in the commission of the rape, all to run consecutively to each other.

Defendant appealed, asserting numerous errors. We reversed, as to sentence only, and remanded for resentencing. At the second sentencing, defendant received a sentence identical to that which he had received before, except that the eight-month sentence for false imprisonment was stayed

---

[1] All statutory references hereinafter, unless otherwise noted, are to the Penal Code.

pursuant to section 654, as our opinion on appeal had required. Defendant's total state prison commitment upon resentencing is thus fourteen years and eight months, just eight months less than his total commitment upon being sentenced the first time.

Defendant again appeals.

*Facts*

On Monday, January 25, 1988, defendant approached Mary T.'s car where she had stopped it to talk to two young men on a street corner, opened the passenger side door, and entered the car uninvited. Defendant asserted he had a gun and displayed a razor blade. He took a little over $300 in cash which Mary T. had in her wallet and required her to drive him around all afternoon while he bought cocaine with the money, consumed some of the cocaine, and resold some of it. He finally took Mary T. to a motel that evening. Defendant prevented Mary T. from leaving the motel room and had sexual intercourse with her there. Thereafter, Mary T. escaped from the motel room on foot, nude from the waist down, and defendant left in her car.

Mary T. was unwilling to be defendant's companion, but defendant so intimidated her that she passed up opportunities which presented themselves for her to attempt escape or to seek assistance. At one time, defendant took Mary T.'s car keys and went into a house, leaving Mary T. in her car on the street, and Mary T. stayed there until he returned. Defendant took Mary T. to a house where he left her while he went out to buy and sell cocaine, and she stayed there until he returned. Defendant got out of Mary T.'s two-door car to let another passenger in while Mary T. was at the wheel, and she did not drive away. Defendant took Mary T. into a market where there were other people, and Mary T. did not ask for help from any of those people. Defendant sent Mary T. into the motel office to register while he waited outside, and Mary T. did not ask the motel desk clerk for help.

*The Second Sentencing Hearing*

At the second sentencing hearing, the court stated four reasons for imposing a full consecutive term for rape: (1) that defendant was armed with and used a weapon, (2) that Mary T. was a particularly vulnerable victim, (3) that defendant attempted to dissuade a witness from testifying, and (4) that defendant was on probation at the time of the crime.

*Discussion*

Defendant contends that the evidence was insufficient to establish reasons (1) through (3), and that reliance on reason (4) was a prohibited dual use of facts.

## A. *Razor blades and pillows as weapons*

Circumstances on which a trial court relies in making a sentencing choice must be established by a preponderance of the evidence. (Cal. Rules of Court, rule 439(b);[2] *People* v. *Ramos* (1980) 106 Cal.App.3d 591, 604 [165 Cal.Rptr. 179]; *People* v. *Nelson* (1978) 85 Cal.App.3d 99, 101-103 [149 Cal.Rptr. 177].) Enhancement allegations must be proved beyond a reasonable doubt. (§ 1170.1, subd. (f); *People* v. *Ramos, supra,* at p. 604; *People* v. *Nelson, supra,* at p. 103.) ■ Therefore, although defendant is correct in asserting that the jury found the weapon use allegation charged in conjunction with the rape count not true, that finding did not preclude the trial court from finding that defendant was armed with or used a weapon in the commission of the rape, for the purpose of imposing a full consecutive sentence.

Mary T. gave the following testimony with respect to defendant's use of a razor blade in the rape. The prosecutor asked, "Did [the defendant] ever display that razor blade [which defendant had been using to cut cocaine] or the other blade that you previously identified [in connection with Mary T.'s description of the robbery] toward you?" Mary T. responded, "Yes." The prosecutor asked, "Under what circumstances?" Mary T. responded, "He told me that I was gonna give him some. He said I was gonna give him some pussy." Mary T. further testified, "He told me he wanted sex and I refused. . . . He got very violent. He jumped up with the razor blade and he told me he was gonna cut me. He had the razor blade to my throat." A struggle ensued in which defendant overpowered Mary T. without cutting her with the razor blade. Defendant smothered Mary T. into unconsciousness. Mary T. testified that after she had regained consciousness, "I didn't want to open my eyes because I didn't want him to think that I was alive. I was praying that he thought I was dead or unconscious." Mary T. continued to feign unconsciousness while defendant pulled off her pants and underpants and raped her.

■ Defendant attempts to make two points with respect to this testimony. First, he argues that he did not actually use the razor blade; he only threatened to use it. Defendant cites *People* v. *Garfield* (1979) 92

---

[2] All references to rules are to the California Rules of Court.

Cal.App.3d 475, 479-480 [154 Cal.Rptr. 869], which stands for the proposition that mere possession of a weapon is not cognizable as a circumstance in aggravation under rule 421. Second, he argues that "[t]he blade was discarded long before the rape occurred . . . ."

The rape had begun at least as soon as defendant became violent and threatening in response to Mary T.'s refusal of sex, for violence and fear-inducing threats were as much elements of the forcible rape as coitus was. (§ 261, subd. (2).) As long as Mary T.'s submission was due in any part to what defendant had done with the razor blade, defendant had used the razor blade in the commission of the crime. To induce fearful compliance in one's victim through display of a weapon and an implicit or explicit threat to injure is as much a use of the weapon as actual infliction of injury is use of the weapon. (See *In re Anthony H.* (1980) 108 Cal.App.3d 494, 497-498 [166 Cal.Rptr. 607] [appellant who had induced his victim to reach for his wallet by demanding the wallet while holding a knife had used a knife in an attempted robbery].)

The evidence was sufficient for the trial court to find, by a preponderance of the evidence, that defendant raped Mary T. by inducing fear in her through use of a razor blade and that the razor blade was a weapon within the meaning of rule 421(a)(2).

In commenting on defendant's use of a razor blade, the trial court also alluded to the fact that defendant had put a pillow over Mary T.'s face while he was having sexual intercourse with her. Defendant complains that a finding that he used the pillow as a weapon would be unsupported by the evidence. Defendant may be right, but the trial court's allusion to the pillow was in the nature of an embellishment on the court's weapon finding which was based on the razor blade, not a discrete finding based on another weapon. No error appears in the court's allusion to a pillow.

B. *Victim vulnerability*

■ Defendant cites cases where victims were attacked in their homes. (*People* v. *Huber* (1986) 181 Cal.App.3d 601, 610-612, 614 [227 Cal.Rptr. 113] [victims asleep when defendant broke in]; *People* v. *Wilson* (1982) 135 Cal.App.3d 343, 350 [185 Cal.Rptr. 498] [rapists entered apartment over lone victim's protest]; *People* v. *Smith* (1979) 94 Cal.App.3d 433, 435 [156 Cal.Rptr. 502] [victims asleep when their attackers broke in].) Defendant concludes, "The court's finding of mental vulnerability is not supported by case law."

Other cases are more on point than those which defendant cites. In *People* v. *Clark* (1990) 50 Cal.3d 583, 594, 638 [268 Cal.Rptr. 399, 789 P.2d

127], the defendant manipulated the naïve trust of the victim, his ex-wife, and "gained entrance to a location where she was alone, inaccessible, unprotected, and unable to protect herself from" rape, by representing to her "that his mother was very ill." These facts supported a finding of victim vulnerability under rule 421(a)(3). (*Id.*, at p. 638.)

In *People* v. *Hubbell* (1980) 108 Cal.App.3d 253, 259 [166 Cal.Rptr. 466], the defendant offered the victim a ride in his car and she naïvely accepted. After he drove past her intended destination, she repeatedly attempted to escape, but he thwarted her attempts by repeatedly grabbing her hair and once threatening to kill her if she again attempted to jump out of the car. (*Ibid.*) These facts supported a finding of victim vulnerability under rule 421(a)(3). (*Ibid.*)

*Clark* and *Hubbell* emphasize the situations of physical vulnerability in which the victims eventually found themselves, but in each instance, the victim ended up in such a situation because of her mental vulnerability— naïvete in believing a story about serious illness or in accepting a ride from a stranger.

Mary T. suffered a similar fate. Mary T.'s initial lack of caution in leaving her car doors unlocked, plus her fearful failure to avail herself of opportunities to escape or seek help ultimately left her trapped in the motel room with no realistic chance of escaping from defendant's design on her, and the desperate pluck which she then displayed came too late to save her from that design. When Mary T. tried to free herself from defendant's grasp, he said, "I'll kill you bitch, I'll kill you." When Mary T. bolted for the door of the motel room after biting defendant's finger so hard he momentarily let go of her, defendant grabbed her from behind before she could get both of the locks on the door undone, threw her onto the floor, banged her head on the floor, and smothered her into unconsciousness.

The evidence was sufficient for the trial court to find, by a preponderance of the evidence, that Mary T. was a particularly vulnerable victim within the meaning of rule 421(a)(3).

C. *Witness dissuasion*

Otis Winfield was a defense witness at defendant's trial. Evidence that defendant had improperly attempted to influence Winfield's testimony was admitted at defendant's trial in the form of testimony from Robert Wilson, a police detective who had interviewed Winfield before trial. The prosecutor asked, "What, if anything, did Otis Winfield tell you about the defendant asking him to participate in this case?" Wilson replied, "He told me the

defendant had called him from county jail and wanted him to lie for him." The prosecutor asked, "Did Otis Winfield use the word 'lie'?" Wilson replied, "Yes."

■ Defendant argues that "the record does not reveal [defend]ant asked Winfield to lie, or threatened Winfield to get him to lie, only that Winfield thought [defend]ant wanted him to lie. . . . [¶]In addition, the court's finding at resentencing was not that a witness was dissuaded, only that [defend]ant attempted to do so." (Italics deleted.)

Defendant's first point is insubstantial. The trial court could readily infer that the reason Winfield thought defendant wanted him to lie is because defendant asked him to lie.

Defendant's second point is that although attempted subornation of perjury is a crime (§§ 127, 664), attempted subornation of perjury cannot be a circumstance in aggravation under rule 421(a)(6). Rule 408(a) provides, "The enumeration in these rules of some criteria for the making of discretionary sentencing decisions does not prohibit the application of additional criteria reasonably related to the decision being made. . . ." Although defendant's second point is technically correct, it avails him nothing, because under rule 408(a), the trial court was entitled to count mere attempts to do any of the misdeeds listed in rule 421(a)(6) as circumstances in aggravation. (See *People* v. *Berry* (1981) 117 Cal.App.3d 184, 191 [172 Cal.Rptr. 756] [sentencing court could consider two prior convictions as a circumstance in aggravation under rule 408(a), even though they were not "numerous," as required by rule 421(b)(2)].)

The trial court did not err in relying on defendant's attempted subornation of perjury as a reason for imposing a full consecutive term for rape.

D.  *Dual use of defendant's probationary status*

Rule 441(c) and (d) provides, "(c) A fact used to enhance the defendant's prison sentence may not be used to impose the upper term. [¶] (d) A fact which is an element of the crime may not be used to impose the upper term."  ■  Defendant correctly relies on *People* v. *Reeder* (1984) 152 Cal.App.3d 900, 919 [200 Cal.Rptr. 479] for the proposition that a consecutive sentence is an enhancement. The sentencing court relied on defendant's unsatisfactory performance on probation as a reason for making defendant's terms for false imprisonment and unlawful vehicle-taking consecutive to his term for robbery. The court relied on defendant's status as a probationer as a reason for making defendant's term for rape full and consecutive.

Defendant contends that "the court used his probation status twice to justify separate consecutive terms in violation of rule 441."

Defendant errs. Probationary status was not an element of any of the crimes of which defendant stands convicted, and the court clearly did not rely on his status as a probationer to impose the upper term for any of those crimes in any event, because defendant received the midterm or a fraction of the midterm for each count. Rule 441's proscriptions against dual use of facts did not apply.

Even if a proscription against dual use of facts did apply, performance on probation and probationary status are "[p]alpably different factors," and no dual use of facts would have occurred. (See *People* v. *Jerome* (1984) 160 Cal.App.3d 1087, 1098 [207 Cal.Rptr. 199].) Further, "[n]othing in [section 1170, subdivision (b)] or [the] rules precludes the sentencing court from using the same fact(s) as a basis for more than one consecutive sentence." (*People* v. *Bejarano* (1981) 114 Cal.App.3d 693, 705 [173 Cal.Rptr. 71], quoted in *People* v. *Hetherington* (1984) 154 Cal.App.3d 1132, 1142 [201 Cal.Rptr. 756]; accord *People* v. *Smith* (1984) 155 Cal.App.3d 539, 545 [202 Cal.Rptr. 259].)

The trial court perpetrated no prohibited dual use of a fact.

The judgment is affirmed.

Newsom, Acting P. J., and Stein, J., concurred.

A petition for a rehearing was denied May 13, 1991, and appellant's petition for review by the Supreme Court was denied July 10, 1991.