Filed 2/27/13  P. v. Hernandez CA6

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H037908 |
| Plaintiff and Respondent, | (Monterey County Super. Ct. No. SS111731) |
| v. | |
| OCTAVIO HERNANDEZ, | |
| Defendant and Appellant. | |

Defendant Octavio Hernandez appeals after pleading no contest to second degree robbery.  (Pen. Code, § 211.) [1]  He was sentenced to the five-year upper term.

On appeal, defendant contends that the trial court abused its discretion by imposing the upper-term sentence.  For the reasons stated below, we will affirm the judgment.

## BACKGROUND

### A.    *The Robbery*

On April 14, 2011, Joshua Magaoay was working as a delivery driver for Sweet Leaf Caregivers, a medical marijuana distributor.  He was dispatched to deliver marijuana to defendant.  Magaoay had delivered marijuana to defendant about two weeks earlier.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

Magaoay initially attempted to deliver the marijuana to defendant's home. After two or three unsuccessful attempts to meet defendant at his home, defendant called and asked to meet Magaoay at a Safeway parking lot.

Magaoay arrived at the Safeway parking lot at about 5 or 6 pm. He was alone in his car. He was in possession of about $1,000 in cash and about one and a half pounds of marijuana.

Defendant walked up and got into Magaoay's car. They discussed the various product options and defendant made a selection. Magaoay began to weigh out the product. He looked up and saw defendant pointing a silver handgun at his face. Defendant said, "I am not playing around."

Defendant asked for Magaoay's car keys, wallet, and cell phone. Magaoay gave him the car keys, cell phone, and money from the marijuana case, as well as the briefcase containing the marijuana. Defendant said, "Don't tell anybody if you [don't] want anything to happen to your family." He then left Magaoay's car and got into the passenger side of a waiting car.

Magaoay knew the difference between handguns and revolvers. He had seen real guns three or four times before, and the gun defendant had looked real. He could tell it was a semiautomatic handgun, not a revolver. Because he had never seen a replica gun, he acknowledged he would not know how to recognize one.

Customers who are registered with Sweet Leaf Caregivers are required to provide photo identification, and defendant was subsequently identified by records at Sweet Leaf Caregivers. Following the incident, Magaoay quit working for Sweet Leaf Caregivers because he was afraid of getting shot.

### B.    *Charges, Plea, and Sentencing*

On October 25, 2011, defendant was charged, by information, with second degree robbery. (§ 211.) The information alleged that defendant personally used a firearm in the commission of the robbery. (§ 12022.5, subd. (a).)

On December 14, 2011, defendant pleaded no contest to the robbery in exchange for dismissal of the firearm use allegation.  At the sentencing hearing on January 11, 2012, the trial court imposed the five-year upper term for the robbery.  The trial court also imposed a $1,200 restitution fine (§ 1202.4, subd. (b)), but it later reduced the restitution fine to $1,000.[2]

## DISCUSSION

Defendant contends the trial court abused its discretion by imposing the five-year upper term sentence for robbery.  Defendant claims that the trial court erred because the aggravating circumstances it found "are either elements of the charged crime or are unsupported by substantial evidence."

### A.    *Proceedings Below*

Following his plea, defendant told the probation officer that some friends had explained how to commit the robbery and that his original plan included a friend who had " 'backed out' at the last minute."  Defendant claimed he used a fake gun and that "[i]t was never his intention to hurt his family or the victim."  He expressed remorse "for the stress and inconvenience" he had caused his parents, and he apologized to the victim "for the inconvenience he caused."

The probation report listed the following circumstances in aggravation under California Rules of Court, rule 4.421(a)[3]:  (1) "The crime involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty,

---

[2] The trial court calculated the original $1,200 restitution fine under the formula of section 1202.4, subdivision (b)(2), using the $240 minimum fine in effect at the time of sentencing.  However, at the time of defendant's offense, the minimum restitution fine was $200.  (Stats. 2010, ch. 351, § 9, (A.B. 819).)  In the opening brief, defendant claimed that imposition of the $1,200 restitution fine violated the constitutional prohibition against ex post facto laws.  On August 3, 2012, the trial court reduced the fine to $1,000.  In his reply brief, defendant withdrew his argument as moot.

[3] All further rule references are to the California Rules of Court.

viciousness, or callousness;" (2) "[t]he defendant was armed with or used a weapon at the time of the commission of the crime;" (3) "[t]he victim was particularly vulnerable;" (4) "[t]he defendant induced others to participate in the commission of the crime or occupied a position of leadership or dominance of other participants in its commission;" (5) "[t]he manner in which the crime was carried out indicates planning, sophistication, or professionalism;" and (6) "[t]he crime involved an attempted or actual taking or damage of great monetary value." The probation report also listed one factor in aggravation under rule 4.421(b): "The defendant has engaged in violent conduct that indicates a serious danger to society." The probation report listed one circumstance in mitigation under rule 4.423(b)(1): "The defendant has no prior criminal record."

At the sentencing hearing, the prosecutor advocated for imposition of the upper term. The prosecutor reminded the court that defendant had been allowed to plead to the robbery charge without the personal firearm use allegation, which would have added time to his sentence.[4]

Trial counsel advocated for imposition of the low term. He reiterated the favorable parts of the probation report, arguing that it was "never [defendant's] intention to hurt the victim" and claiming that "[h]e used a fake gun." He disputed that any of the factors in aggravation applied. He claimed that the crime did not involve great violence or a threat of great bodily harm or the use of a weapon because defendant "used a fake gun." He asserted that the victim was not particularly vulnerable and that while another person was involved, defendant did not induce others to participate. He argued that the crime did not involve planning, sophistication, or professionalism because "it was actually a very dumb and stupid plan," since Sweet Leaf Caregivers had defendant's name and address. Trial counsel also argued that defendant did not engage in violent

---

[4] The prosecutor asserted that the firearm use allegation "would have added ten years to this sentence." In fact, section 12022.5, subdivision (a) permits the trial court to impose a term of 3, 4, or 10 years.

4

conduct. Finally, he reminded the court that defendant had no criminal record and argued that the "early resolution" of the case was another mitigating circumstance.

The trial court gave defendant an opportunity to speak. Defendant apologized to his family and to the victim. He reiterated his claim that he had no intent to harm the victim and his claim that "the gun wasn't real." The trial court responded, "Well, I don't know if the gun was real or not. . . . I assume the People don't think they can prove it was real. I don't think any firearm was ever located, real or not real."

The trial court then made findings concerning the circumstances in aggravation. It found that the crime involved great violence or a threat of great bodily harm (rule 4.421(a)(1)), that defendant was armed during the commission of the crime (rule 4.421(a)(2)), and that the manner in which the crime was carried out indicated planning, sophistication, or professionalism (rule 4.421(a)(8)). The trial court also found that defendant "has engaged in violent conduct indicating he is a serious danger to society." (See rule 4.421(b)(1).)

The trial court found defendant's early acceptance of responsibility was a mitigating circumstance (rule 4.423(b)(3)), and it found that defendant did not have "any criminal history" (rule 4.423(b)(1)). The trial court specified that these circumstances did not outweigh the aggravating circumstances: "[J]ust based on the crime alone, the Court feels five years is an appropriate sentence."

### B. Analysis

"When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the choice of the appropriate term shall rest within the sound discretion of the court." (§ 1170, subd. (b).) "In exercising his or her discretion in selecting one of the three authorized prison terms referred to in section 1170(b), the sentencing judge may consider circumstances in aggravation or mitigation, and any other factor reasonably related to the sentencing decision." (Rule 4.420(b).)

" 'Sentencing courts have wide discretion in weighing aggravating and mitigating factors [citations], and may balance them against each other in "qualitative as well as quantitative terms." ' " (*People v. Avalos* (1996) 47 Cal.App.4th 1569, 1582.) An appellate court should not reweigh the circumstances in aggravation and mitigation, but must consider only whether "the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice." (*People v. Jordan* (1986) 42 Cal.3d 308, 316.) Even a single circumstance in aggravation may justify the selection of an upper term. (*People v. Osband* (1996) 13 Cal.4th 622, 730; *People v. Kelley* (1997) 52 Cal.App.4th 568, 581; see *People v. Nevill* (1985) 167 Cal.App.3d 198, 202 [a single aggravating factor can justify upper term if it "outweighs the cumulative effect of all mitigating factors"].)

### 1. Violence and Threat of Great Bodily Harm

Defendant first contends that the trial court erred by finding that the crime involved great violence or a threat of great bodily harm. (Rule 4.421(a)(1).) Defendant argues that the use or threatened use of force is an element of robbery and that he did not use any actual violence in committing the robbery.

"A fact that is an element of the crime upon which punishment is being imposed may not be used to impose a greater term." (Rule 4.420(d).) An aggravating circumstance is a fact that makes the offense " 'distinctively worse than the ordinary.' " (*People v. Black* (2007) 41 Cal.4th 799, 817.)

Although robbery necessarily requires the use of force or fear, prior cases have held that a defendant's "threatening conduct" during a robbery may support a finding that the crime involved great violence or a threat of great bodily harm within the meaning of rule 4.421(a)(1). (See *People v. Garcia* (1995) 32 Cal.App.4th 1756, 1775-1776 (*Garcia*), and cases cited.) " '[T]he elements of force and fear do not need to be extreme for purposes of constituting robbery. [Citations.] [¶] This means that the threat of

6

bodily harm can frequently exceed the minimum requirement necessary for purposes of establishing robbery.' [Citation.]" (*Id.* at p. 1776.)

Arguments similar to defendant's were rejected in *People v. Cortez* (1980) 103 Cal.App.3d 491, where Cortez was sentenced to the five-year upper term for robbery. During the robbery, he had "poked a screwdriver" into the victim's ribs and told the victim that he had a friend outside with a shotgun. (*Id.* at p. 493.) On appeal, he challenged his upper term sentence, contending that the trial court erred by relying on the " 'threatening manner' in which the screwdriver was used and the 'threatening language' of a friend outside with a shotgun." (*Id.* at p. 496.) Like defendant, Cortez argued that the threats "necessarily related to the element of fear" required for robbery. (*Ibid.*) The court disagreed, explaining, "While robbery is the taking of property in the possession of another, from his person or immediate presence and against his will, accomplished by means of force or fear, the particular means of force or the manner in which fear is imparted is not an element of robbery. The means of accomplishing the crime are facts relating to the crime within the meaning of [former] rule 421(a)." (*Ibid.*; see also *People v. Reid* (1982) 133 Cal.App.3d 354, 369 (*Reid*) [trial court did not err by finding that robbery was aggravated because it involved a threat of great bodily harm, despite defendant's use of a toy gun].)

In the present case, defendant pointed a handgun at the victim's face, told him that he was "not playing around," and threatened the victim's family. Even if defendant's assertion about using a replica gun was true, the victim believed he was being threatened with a real gun. The trial court did not abuse its discretion by finding that defendant's threatening conduct " 'exceed[ed] the minimum requirement necessary for purposes of establishing robbery' " (*Garcia, supra,* 32 Cal.App.4th at p. 1776) and thus that it constituted a circumstance in aggravation under rule 4.421(a)(1).

7

### 2.    Use of a Weapon

Defendant contends the trial court erred by finding, as a circumstance in aggravation, that defendant was armed during the commission of the crime. (Rule 4.421(a)(2).)  He contends there was insufficient evidence that he used a real gun "as opposed to a firearm replica."

At the preliminary hearing, the victim testified that he believed that defendant pointed a real gun at him, and the magistrate held defendant to answer on the firearm use allegation, indicating it found probable cause to believe that the gun was real.  Although the trial court later noted that it did not "*know* if the gun was real or not," it impliedly found that the gun *was* real.  (Italics added.)  Based on the victim's testimony – including the fact that he had seen real guns before – the trial court could reasonably find that the gun was not merely a replica.

However, even if defendant used a replica gun rather than an operable firearm, the trial court did not abuse its discretion by finding that defendant was armed with or used a weapon within the meaning of rule 4.421(a)(2).  We agree with the Attorney General that the use of a replica or inoperable weapon is a circumstance in aggravation within the meaning of rule 4.421(a)(2) when the victim believes the weapon is real.  In such a case, whether operable or not, the weapon is being used "[t]o induce fearful compliance." (*People v. Lewis* (1991) 229 Cal.App.3d 259, 265.)

Our conclusion is consistent with cases holding that a weapon need not be operable for purposes of section 12022.5's firearm use enhancement or for section 12022's enhancement for being armed with a deadly weapon.  (See, e.g., *People v. Jackson* (1979) 92 Cal.App.3d 899, 903 (*Jackson*); *People v. Nelums* (1982) 31 Cal.3d 355, 360 (*Nelums*).)  These statutes include inoperable weapons because as long as the victim believes that the weapon is operable, there is a possibility that the defendant's use or display of the weapon "may stimulate resistance" and thereby create an additional "potential for harm."  (*Nelums, supra,* at p. 360.)

As with an inoperable weapon, the use of a replica firearm aggravates the circumstances of the crime. Even though the weapon cannot be used, "[t]he danger remains that the reaction by the victim or some third person to the appearance of the gun will cause harm to befall someone." (*Jackson, supra,* 92 Cal.App.3d at p. 903, fn. omitted.)

In sum, whether the gun was real or an inoperable replica, the trial court did not abuse its discretion by finding that defendant was armed with or used a weapon so as to aggravate his crime under rule 4.421(a)(2).

### 3.     Evidence of Planning

Defendant also challenges the trial court's finding that the manner in which the crime was carried out indicated planning, sophistication, or professionalism. (Rule 4.421(a)(8).) At the sentencing hearing, the trial court explained its finding on this circumstance in aggravation: "[H]e arranged to meet the victim, called him, armed himself with some kind of a firearm, and knew the victim would be carrying both money as well as drugs."

Defendant acknowledges "there is some evidence of planning" in the record, but he contends "there is not the slightest hint of sophistication or professionalism." However, the trial court was not required to find that the crime involved sophistication or professionalism *in addition to* planning. The rule is stated in the disjunctive: it is a circumstance in aggravation if "[t]he manner in which the crime was carried out indicates planning, sophistication, *or* professionalism." (Rule 4.421(a)(8), emphasis added.)

Defendant also argues, as he did below, that the crime was *poorly* planned, since his name and address were on file with Sweet Leaf Caregivers, leading him to be easily identified and apprehended. However, a trial court may rely on planning as an aggravating circumstance even when the defendant's plan was not particularly clever. For instance, the court in *People v. Forster* (1994) 29 Cal.App.4th 1746 upheld an upper term sentence for the defendant's conviction of driving while intoxicated because there

9

was evidence he had planned the offense. The defendant had gone to Mexico specifically to drink alcohol, and he was arrested when he tried to cross back into the United States through an inspection station at the border, still intoxicated. (*Id.* at p. 1759; see also *People v. Lai* (2006) 138 Cal.App.4th 1227, 1259 [finding of planning upheld despite the fact that the defendant was uneducated, illiterate, and "not a particularly sophisticated person"].)

Here, defendant planned the robbery in advance, making arrangements to meet the victim in the Safeway parking lot, arming himself with either a real or real-looking firearm, and arranging for a getaway driver. Even though defendant's plan may not have been very well thought-out with respect to concealing his identity, the trial court did not abuse its discretion by finding that the crime involved planning within the meaning of rule 4.421(a)(8).

### 4. Violent Conduct

Defendant also contends that the trial court erred by finding that he engaged in violent conduct indicating he is a serious danger to society. (Rule 4.421(b)(1).) He argues that violence is inherent in a robbery and that he had no criminal history, "let alone any history involving violent conduct."

Even assuming that the trial court erred by finding this circumstance in aggravation, we would find no reversible error in light of our previous analysis of the other circumstances in aggravation. " 'When a trial court has given both proper and improper reasons for a sentence choice, a reviewing court will set aside the sentence only if it is reasonably probable that the trial court would have chosen a lesser sentence had it known that some of its reasons were improper.' [Citation.]" (*People v. Cruz* (1995) 38 Cal.App.4th 427, 433-434, quoting *People v. Price* (1991) 1 Cal.4th 324, 492.) And generally, "a demand for resentencing is not appropriate when there is misplaced reliance on a single aggravating factor." (*Reid, supra,* 133 Cal.App.3d at p. 372.)

As explained above, the trial court did not abuse its discretion by finding the other three cited circumstances in aggravation, all of which had evidentiary support in the record. The trial court also specified that it felt the upper term sentence was appropriate "just based on the crime alone." Thus, it is not reasonably probable that the trial court would have imposed a midterm or lower term sentence even if it erred by finding that defendant engaged in violent conduct indicating he is a serious danger to society.

**DISPOSITION**

The judgment is affirmed.

_____
BAMATTRE-MANOUKIAN, J.

WE CONCUR:

_____
ELIA, ACTING P.J.

_____
MÁRQUEZ, J.

11