DATO, J., Concurring and Dissenting.
I fully concur in the majority opinion except for the discussion concerning *511 Penal Code section 654[1] and its application to defendant Carter's convictions for first degree felony murder and attempted robbery. In that regard, it is well-settled that where a defendant is convicted of first degree murder based on a felony-murder theory, section 654 prohibits separate punishment for both the murder and the underlying felony because both convictions are based on the same indivisible course of conduct. As it is clear in this case that the jury based its murder verdict on a felony-murder theory, rejecting the prosecution's alternative theory of premeditated first degree murder, the sentencing judge was not at liberty to make a factual finding inconsistent with what the jury had already determined was a failure of proof by the People. Indeed, permitting the trial court to find by a mere preponderance of the evidence that Carter committed a premeditated first degree murder would alter the basis for the conviction as determined by the jury, raising significant Fifth and Sixth Amendment concerns.
A
Section 654 is an integral part of California's scheme of criminal punishment. In it, the Legislature has declared that where a single act or indivisible course of conduct violates multiple statutes, the defendant "may be punished for any one of such offenses but not for more than one." ( *848 Neal v. State of California (1960) 55 Cal.2d 11, 19, 9 Cal.Rptr. 607, 357 P.2d 839.) If section 654 applies, "the trial court must stay execution of the sentence on the convictions for which multiple punishment is prohibited." ( People v. Correa (2012) 54 Cal.4th 331, 337, 142 Cal.Rptr.3d 546, 278 P.3d 809.) Here, the trial court concluded that section 654 did not apply because "[t]he crimes and their objectives were predominantly independent of each other." The court's comments, while somewhat confusing,[2] express disagreement with the notion that Carter "had no ... personal participation, in the killing of the victim."
Pursuant to section 654, it has long been the rule that where a murder conviction is based on a felony-murder theory, the defendant cannot be sentenced separately for both the murder and the predicate felony involving a single victim. This is because both the murder and the underlying felony are incident to one objective and thus arise out of a single act or course of conduct. Courts routinely stay the sentence for the predicate felony under section 654 in these circumstances. (See, e.g., People v. Montes (2014) 58 Cal.4th 809, 898, 169 Cal.Rptr.3d 279, 320 P.3d 729 ; People v. Hensley (2014) 59 Cal.4th 788, 828, 175 Cal.Rptr.3d 213, 330 P.3d 296 ; People v. Neely (2009) 176 Cal.App.4th 787, 800, 97 Cal.Rptr.3d 913.)
In applying section 654, we examine the basis for the two convictions to determine whether both arise out of the same act or course of conduct. Thus in People v. Siko (1988) 45 Cal.3d 820, 248 Cal.Rptr. 110, 755 P.2d 294 ( Siko ), a defendant was convicted of rape, sodomy, and lewd acts on a nine-year-old victim; the lewd acts conviction *512 was explicitly based on the rape and the sodomy. ( Id. at p. 826, 248 Cal.Rptr. 110, 755 P.2d 294.) The trial court imposed full sentences on all three counts, and the Supreme Court concluded this violated section 654. ( Siko , at pp. 823, 826, 248 Cal.Rptr. 110, 755 P.2d 294.) The People were not able to avoid this result by claiming the lewd acts conviction could rest on the defendant's separate acts of removing the victim's underwear or tying a handkerchief around her mouth. Although that evidence was adduced at trial, the Siko court focused on the basis for the conviction , concluding there was "no showing that the lewd-conduct count was understood in this fashion" given the instructions and closing arguments. ( Id. at p. 826, 248 Cal.Rptr. 110, 755 P.2d 294.) Thus, the sentencing court could not make findings for purposes of section 654 that were at odds with the plain import of the jury's verdict. *849 A similar result was reached in People v. Jones (2012) 54 Cal.4th 350, 142 Cal.Rptr.3d 561, 278 P.3d 821. There, a defendant was convicted under three statutes that barred a felon from carrying a loaded and concealed firearm. Because the record showed that the jury based all three convictions on a single act, section 654 prohibited punishment for more than one of those crimes. ( Jones , at p. 352, 142 Cal.Rptr.3d 561, 278 P.3d 821.) The People were not permitted to construct an alternative factual basis for one of the convictions from the trial evidence, since the "record establishe[d] that the jury convicted defendant of each crime due to his being caught with the gun in the car ..., not due to any antecedent possession." ( Id. at p. 359, 142 Cal.Rptr.3d 561, 278 P.3d 821.) And it was not within the sentencing court's power to make findings inconsistent with the jury's verdict.
The People contend this case is different and that section 654 does not apply because here the jury was presented with two alternative theories of first degree murder, both of which were supported by the evidence. They contend that where there is sufficient evidence to support each of two alternative murder theories,[3] only one of which would run afoul of section 654, California law generally permits a sentencing court to determine that separate punishment of both the murder and the underlying felony is appropriate based on a finding that the defendant entertained multiple intents and objectives. (See People v. Osband (1996) 13 Cal.4th 622, 731, 55 Cal.Rptr.2d 26, 919 P.2d 640 ( Osband ).) Had the jury simply been instructed on alternative theories of first degree murder-premeditation and felony murder-and returned an undifferentiated verdict of guilty, we would have no way of knowing which theory the jury relied on, or indeed whether some jurors relied on one and others relied on the second. Under those circumstances, case precedent would ordinarily allow the sentencing court to find by a preponderance of the evidence that Brandon's murder was premeditated and deliberate because such a finding would not be inconsistent with the demonstrated *513 basis for the conviction as reflected in the jury's verdict . (See People v. McCoy (2012) 208 Cal.App.4th 1333, 1339-1340, 146 Cal.Rptr.3d 469 ( McCoy ).)
But there is a further limit to when the trial court may find which of two alternative theories of murder the defendant committed, a limit that has its roots in fundamental constitutional precepts. As Osband instructs, the trial *850 court is permitted to make independent findings for purposes of section 654 only when "it is unknown whether [the defendant] was found guilty of first degree murder on a theory of felony murder or premeditation and deliberation." ( Osband , supra , 13 Cal.4th at p. 730, 55 Cal.Rptr.2d 26, 919 P.2d 640, italics added.) On the other hand, a sentencing court addressing a section 654 issue "cannot countermand the jury" and make a factual finding contrary to the jury's verdict. ( People v. Bradley (2003) 111 Cal.App.4th 765, 770, 4 Cal.Rptr.3d 166 ( Bradley ).) Distilling Siko , Bradley , and a handful of other Court of Appeal decisions, McCoy concisely articulated the general rule: "[I]n the absence of some circumstance 'foreclosing' its sentencing discretion ..., a trial court may base its decision under section 654 on any of the facts that are in evidence at trial, without regard to the verdicts." ( McCoy , supra , 208 Cal.App.4th at p. 1340, 146 Cal.Rptr.3d 469.) But "where there is a basis for identifying the specific factual basis for a verdict, a trial court cannot find otherwise in applying section 654." ( Id. at p. 1339, 146 Cal.Rptr.3d 469, italics added.)
In this case, we know the specific factual basis for the verdict. The jurors were instructed on and the prosecution argued two theories of first degree murder based on two-and only two-factual scenarios: (1) the premeditated and deliberate murder of Brandon by use of a firearm, and (2) felony murder as a result of Carter's admitted participation in the attempted robbery.[4] During closing arguments, the prosecutor premised her premeditated murder theory on Carter being the actual shooter. There was evidence at trial from which the jury could find that Carter personally shot and killed Brandon after entering the house and finding his cousin dead. But the prosecutor's primary theory was that Carter was guilty of first degree felony murder based on his conceded role in serving as a lookout for the underlying robbery attempt. Noting that the facts on the felony-murder theory were "uncontroverted," she told jurors they should "sign verdict form 1-A, guilty of first degree murder" and be "done."
A weapon use allegation was attached to the murder charge in count 1. Once the jury found Carter guilty of Brandon's murder, it had to decide whether Carter "personally and intentionally discharged a firearm, a handgun, *851 causing great bodily injury or death." The jury was told that *514 the People bore the burden of proving the firearm use allegation beyond a reasonable doubt. ( CALCRIM No. 3149.)
Ultimately, the jury convicted Carter of first degree murder, but unanimously concluded that the prosecution failed to prove he "personally and intentionally discharged a firearm." By finding the firearm use allegation attached to the murder count "not true," the jurors necessarily harbored at least a reasonable doubt as to whether Carter was the actual shooter. To be sure, the "not true" finding does not reflect an affirmative finding by the jury that Carter was not the actual shooter. It merely reflects the jury's determination that there was insufficient evidence to find he was the actual shooter beyond a reasonable doubt. ( People v. Santamaria (1994) 8 Cal.4th 903, 922, 35 Cal.Rptr.2d 624, 884 P.2d 81 ( Santamaria ).) But in the particular context of this case, the weapon use finding attached to the murder count carries significant implications for section 654 because it establishes the basis for the jury's first degree murder verdict. The sole theory of premeditated murder offered by the prosecution relied on Carter being the actual shooter. So the jury's weapon use finding means it necessarily based its first degree murder conviction on the felony-murder theory. (See Santamaria , at p. 931, 35 Cal.Rptr.2d 624, 884 P.2d 81 (conc. & dis. opn. of Mosk, J.) ["Obviously, no juror can determine that a defendant is guilty of a crime beyond a reasonable doubt on a theory dependent on a necessary fact as to which each and every juror has a reasonable doubt."].)
The "not true" verdict on firearm use has the same effect here as a special jury finding that the murder conviction is based on the felony-murder theory. The majority opinion acknowledges that binding section 654 precedent requires we look to objective indicators to determine the basis for the conviction-prosecutorial arguments, charging documents, instructions, and verdict forms. If we are to look to these indirect indicators to determine what the jury did, why would we not look to and rely upon a specific finding made by the jury pertaining to the very conviction-first degree murder-we are attempting to evaluate?
On this record, there is a basis to identify the specific factual predicate for the jury's first degree murder verdict. ( McCoy, supra, 208 Cal.App.4th at p. 1339, 146 Cal.Rptr.3d 469.) Because we know the jury unanimously found guilt based on felony murder-and unanimously rejected guilt based on a premeditated shooting with a firearm-the trial court could not make the contrary finding by a preponderance of the evidence that Carter harbored a premeditated intent to kill separate and apart from his intent to assist in the underlying attempted *852 robbery. To allow such a finding would be to permit the trial judge to change the basis of the defendant's conviction as determined by the jury.[5] *515 This result is not changed by the rule allowing inconsistent verdicts. (See Santamaria, supra, 8 Cal.4th at p. 911, 35 Cal.Rptr.2d 624, 884 P.2d 81 ; People v. Avila (2006) 38 Cal.4th 491, 600, 43 Cal.Rptr.3d 1, 133 P.3d 1076.) That rule, often invoked on sufficiency-of-the-evidence review, draws its logic from the fact that a defendant who receives the benefit of acquittal on one count may fairly be made to accept the burden of an inconsistent conviction. ( Avila , at p. 600, 43 Cal.Rptr.3d 1, 133 P.3d 1076, citing United States v. Powell (1984) 469 U.S. 57, 69, 105 S.Ct. 471, 83 L.Ed.2d 461 ; see § 954.) To apply that concept here would not allow inconsistent jury verdicts; there is nothing inconsistent about what this jury did. It would rather create an inconsistency between the verdict and the sentence by permitting the court to change the basis for the defendant's conviction as found by the jury.
B
I think it reasonably clear that in deciding whether to apply section 654, California precedent does not permit sentencing courts to make factual findings by a preponderance of the evidence that are inconsistent with determinations already made by the jury using a reasonable doubt standard. Relying largely on cases that do not involve section 654, the majority reach a different conclusion. (See People v. Towne (2008) 44 Cal.4th 63, 85, 78 Cal.Rptr.3d 530, 186 P.3d 10 ( Towne ) [court may consider evidence underlying acquitted counts in selecting sentence within a range]; People v. Lewis (1991) 229 Cal.App.3d 259, 264, 280 Cal.Rptr. 128 ["not true" finding on weapon use allegation does not preclude court from considering weapon use to impose full consecutive sentence].) Even if there is uncertainty in the case law, I submit there are additional important reasons why section 654 should *853 apply to preclude multiple punishments in this narrow context, and thus avoid opening a proverbial can of worms.
The Sixth Amendment right to trial by jury, as interpreted by the United States Supreme Court in Apprendi v. New Jersey (2000) 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 ( Apprendi ), generally requires that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." ( Id. at p. 490, 120 S.Ct. 2348.) California courts have consistently held that Apprendi does not apply to factual findings under section 654 because the statute envisions a sentence reduction , not an enhancement. (See, e.g., People v. Deegan (2016) 247 Cal.App.4th 532, 547, 202 Cal.Rptr.3d 204 ( Deegan ); People v. Cleveland (2001) 87 Cal.App.4th 263, 267, 104 Cal.Rptr.2d 641.) That said, none of those cases have involved situations in which the sentencing judge attempted to make factual findings inconsistent with the jury's determination.[6] Moreover, in *516 Blakely v. Washington (2004) 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403, the Supreme Court clarified that "the 'statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict .... [Citations] ... When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts 'which the law makes essential to the punishment,' [citation] and the judge exceeds his proper authority." ( Id. at pp. 303-304, 124 S.Ct. 2531 ; see id. at p. 306, 124 S.Ct. 2531 [" Apprendi, [530 U.S. 466, 120 S.Ct. 2348] ensur[es] that the judge's authority to sentence derives wholly from the jury's verdict."].)
Whatever may be said of a sentencing court's gap-filling ability to make findings with regard to factual issues left unresolved by the jury, it is a far different matter where the trial judge utilizes a lesser standard of proof to make factual findings that conflict with the jury's conclusion. Here, the basis for Carter's first degree murder conviction is clear. The verdict of "not true"
*854 on the firearm use enhancement reflects a unanimous finding by the jury that the prosecution did not prove beyond a reasonable doubt that Carter committed a premeditated first degree murder by shooting the victim. Thus, when the jury nonetheless convicted Carter of first degree murder, it necessarily relied on a felony-murder theory. A murder conviction based on a felony-murder theory arises out of the same act or course of conduct as the underlying felony for section 654 purposes, precluding multiple punishments. To allow a sentencing judge to impose multiple punishments by finding facts on a preponderance-of-the-evidence standard that are inconsistent with the "facts reflected in the jury verdict" would raise serious Sixth Amendment concerns.[7]
This second round of inconsistent factual findings by the sentencing judge may also raise double jeopardy issues. It is certainly true that where a defendant has been convicted on some counts and acquitted on others, double jeopardy principles do not prevent a sentencing court from using facts underlying an acquitted count in deciding what sentence to impose on a convicted count. (See United States v. Watts (1997) 519 U.S. 148, 154, 117 S.Ct. 633, 136 L.Ed.2d 554 ; Towne , supra , 44 Cal.4th at p. 87, 78 Cal.Rptr.3d 530, 186 P.3d 10.) But the inconsistent finding by the trial court *517 here does not merely assist in selecting the length of the sentence to be imposed for a crime (first degree murder) of which defendant was properly convicted by a jury. ( Watts , at p. 155, 117 S.Ct. 633, citing Witte v. U.S. (1995) 515 U.S. 389, 401, 115 S.Ct. 2199, 132 L.Ed.2d 351.) Instead it changes the factual basis for the murder conviction from a theory the jury accepted (felony murder) to one it implicitly but necessarily rejected (premeditated murder). Where the jury has already determined that the prosecution did not prove a premeditated first degree murder beyond a reasonable doubt, on what basis can the defendant be exposed to a second hearing at which a different trier of fact applying a lesser standard will decide the same question?
C
In my view, California case law has traced a reasonably clear line defining a sentencing court's ability to make factual findings necessary to the application of section 654. Where the jury's verdict does not resolve a factual issue, the trial court may make findings not inconsistent with the verdict. But at the same time, the court may not find facts by a lesser standard of proof that have *855 the effect of "countermand[ing]" the verdict by changing the basis for the defendant's conviction as determined by the jury. ( Bradley , supra , 111 Cal.App.4th at p. 770, 4 Cal.Rptr.3d 166.) The trial court's conclusion here-that Carter committed a deliberate and premeditated murder-had precisely that effect, and therefore exceeded the court's power. I would, accordingly, modify the judgment as to Carter, staying the punishment on count 4 for attempted robbery.

All further statutory references are to the Penal Code.

Commenting that "I cannot get into the minds of the jurors," the court expressed the view that the jury could have found the weapon use allegation not true if it concluded that Carter "personally used a weapon and killed someone" but had a "reasonable doubt as to what weapon, whose weapon, what happened to the weapon." To the contrary, however, the jury was instructed that to find the allegation true, the People only had to establish three things: "1. The defendant personally discharged a firearm during the commission or attempted commission of [the] crime; [¶] 2. The defendant intended to discharge the firearm; [¶] AND [¶] 3. The defendant's act caused [Brandon's] death ...."

In People v. Chapman (1968) 261 Cal.App.2d 149, 67 Cal.Rptr. 601, as in this case, the jury was instructed on both premeditated and deliberate murder and felony murder. But in Chapman , the only theory supported by the evidence was felony murder. (Id. at pp. 179-180, 67 Cal.Rptr. 601.) As a result, section 654 prevented the court from sentencing the defendant for both robbery and first degree murder. (Chapman , at pp. 179-180, 67 Cal.Rptr. 601 ) The only functional difference between this case and Chapman is that here, while there may have been substantial evidence to support an alternative theory of premeditated first degree murder, the jury ultimately concluded that the People failed to meet their burden of proof. In both cases the basis for the murder conviction was felony murder.

For the first time at oral argument on appeal, the People sought to identify a third theory of first degree murder unaffected by the firearm use finding: that Carter might have directed or encouraged Aaron or Albert to shoot Brandon. This theory is not supported by the evidence. If the jury believed Carter went inside the house before Brandon was murdered, the only evidence as to what he did there was his own alleged statement that he "got the guy" who killed his cousin. Although aiding and abetting was included among the general instructions on liability principles (CALCRIM No. 401 ), the prosecutor only mentioned this concept to discuss Carter's role in the robbery , not as a separate theory of premeditated and deliberate murder. The prosecutor's sole theory of premeditated murder was that Carter entered the residence after Aaron and Albert were killed; he then shot and killed Brandon. Because there is "no showing that the [murder] count was understood" at trial in the manner the People now suggest on appeal, we must disregard this post hoc theory. (Siko , supra , 45 Cal.3d at p. 826, 248 Cal.Rptr. 110, 755 P.2d 294.)

This case is distinguishable from Santamaria , supra , 8 Cal.4th 903, 35 Cal.Rptr.2d 624, 884 P.2d 81 (a case that in any event did not involve section 654 ). Defendant Santamaria was charged with robbery and murder. There were a total of four factual theories of murder: two based on premeditation and deliberation (either as the direct stabber or aider and abettor of the stabber) and two based on felony murder (either from his role as a direct perpetrator or aider and abettor in the robbery). The jury convicted Santamaria of first degree murder but found the knife use allegation "not true." The weapon finding did not foreclose the possibility that jurors were convinced beyond a reasonable doubt that he either used a knife or helped someone who did, but could not say beyond a reasonable doubt which of those events occurred. (Santamaria , at p. 919, 35 Cal.Rptr.2d 624, 884 P.2d 81 ["individual jurors themselves need not choose among the theories, so long as each is convinced of guilt"].) The jury here was not urged to find premeditation under an aiding and abetting theory. (Fn. 4, ante .) Nor are we presented with a scenario in which jurors could have been convinced of Carter's guilt of first degree murder but unsure whether it was by premeditation and deliberation or felony murder . Carter admitted serving as a lookout in the robbery attempt resulting in Brandon's death. The verdicts thus reflect unanimity beyond a reasonable doubt on both premeditated murder (no) and felony murder (yes).

I recognize that in People v. Black (2005) 35 Cal.4th 1238, 1262, 29 Cal.Rptr.3d 740, 113 P.3d 534 (Black I ), the Supreme Court held there was no jury trial right as to factors used to impose consecutive sentencing. Citing Cleveland , the court expressed in dicta that there was also no jury trial right to the "analogous" determination under section 654. (Black I , at p. 1264, 29 Cal.Rptr.3d 740, 113 P.3d 534.) After Cunningham v. California (2007) 549 U.S. 270, 127 S.Ct. 856, 166 L.Ed.2d 856 overruled Black I on another ground, our high court reiterated the holding with regard to consecutive sentences but omitted the dicta concerning section 654. (People v. Black (2007) 41 Cal.4th 799, 820-823, 62 Cal.Rptr.3d 569, 161 P.3d 1130 ; see Oregon v. Ice (2009) 555 U.S. 160, 168, 129 S.Ct. 711, 172 L.Ed.2d 517 [consecutive sentencing does not implicate Apprendi ].) Deegan concluded, "Black I states the law of California with respect to the Sixth Amendment and findings of fact for purposes of applying section 654." (Deegan , supra , 247 Cal.App.4th at p. 549, 202 Cal.Rptr.3d 204.) But even if Deegan correctly interprets the law after Cunningham, the question here is not whether there is a general right to a jury trial on factual issues necessary to apply section 654, but rather whether the Sixth Amendment permits a sentencing judge to find by a preponderance of the evidence that the basis for a defendant's conviction was something other than what was found by the jury.

For example, an Apprendi issue was avoided in Towne , supra , 44 Cal.4th 63, 78 Cal.Rptr.3d 530, 186 P.3d 10 because the defendant had no right to a jury trial on his record of prior convictions, rendering the defendant eligible for the upper term based on that aggravating circumstance alone. (Id. at pp. 83, 86, 78 Cal.Rptr.3d 530, 186 P.3d 10 ; see generally Almendarez-Torres v. U.S. (1998) 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350.) It was in this context that the court could further consider evidence the jury had implicitly found not true through its acquittals on other counts. (Towne , at pp. 83, 87-88, 78 Cal.Rptr.3d 530, 186 P.3d 10.) No such exception to the Apprendi rule is cited here.