Filed 5/17/19 (unmodified opinion attached)

CERTIFIED FOR PARTIAL PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> STEVEN DAVID JAMES CARTER et al., <br><br> Defendants and Appellants. | D073865 <br><br><br> (Super. Ct. No. FWV1202970) <br><br> ORDER MODIFYING OPINION AND DENYING REHEARING <br><br> NO CHANGE IN JUDGMENT |

THE COURT:

It is ordered that the opinion filed herein on April 29, 2019, be modified as follows:

On page 3, the sentence beginning, "Carter and Hall both admitted," is deleted and the following sentence is inserted in its place:

> Carter and Hall both admitted they agreed to help Carter's cousin, Aaron A., and another person named Albert T., break into the home of Brandon P. to steal marijuana plants, although they both denied participating in the actual break-in.

There is no change in the judgment.

Appellant's petition for rehearing is denied.

IRION, Acting P. J.

Copies to:  All parties

Filed 4/29/19 (unmodified version)

CERTIFIED FOR PARTIAL PUBLICATION[*]

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D073865 |
|     Plaintiff and Respondent, | (Super. Ct. No. FWV1202970) |
|     v. | |
| STEVEN DAVID JAMES CARTER et al., | |
|     Defendants and Appellants. | |

APPEAL from a judgment of the Superior Court of San Bernardino County, Shahla S. Sabet, Judge. (Retired Judge of the San Bernardino Sup. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.) Affirmed as modified.

Melissa Hill, under appointment by the Court of Appeal, for Defendant and Appellant Steven David James Carter.

James R. Bostwick, Jr., under appointment by the Court of Appeal, for Defendant and Appellant Michael Andre Hall.

---

[*]    Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of parts II and III.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Arlene A. Sevidal, Lynne G. McGinnis, Meredith S. White, and Michael Pulos, Deputy Attorneys General, for Plaintiff and Respondent.

This case involves a crime that started as an attempted robbery, and ended in the death of three individuals: the victim of the attempted robbery and two of the defendants' cohorts involved in that crime. A jury convicted defendant Steven David James Carter of one count of first degree murder and one count of attempted robbery. Defendant Michael Andre Hall pled no contest to voluntary manslaughter, robbery, and an enhancement. The defendants raise separate sentencing challenges on appeal.

Carter argues the court violated Penal Code section 654 when it sentenced him to consecutive terms for attempted robbery and first degree murder of the robbery victim.[1] Hall contends the court abused its discretion in imposing a 12-year sentence under the terms of his plea agreement. He also challenges alleged errors made during his subsequent resentencing. We agree the trial court erred in Hall's subsequent resentencing, but disagree with Carter's and Hall's remaining sentencing challenges.

After the appeal was fully briefed, we granted the parties' request to file supplemental briefing on the impact of legislative changes to the felony-murder rule under Senate Bill No. 1437 (2017-2018 Reg. Sess.). Senate Bill No. 1437 amended the murder statutes, sections 188 and 189, and enacted a new statute, section 1170.95

---

[1] Further statutory references are to the Penal Code unless otherwise indicated.

2

(Stats. 2018, ch. 1015, §§ 2-4), establishing procedures for eligible defendants to seek resentencing. We conclude Carter and Hall cannot raise their claims in this appeal; they must first petition the superior court for relief under section 1170.95.

The judgment as to Carter is affirmed.

The judgment as to Hall is affirmed as modified.

FACTUAL AND PROCEDURAL BACKGROUND

*Factual Background*

Carter and Hall both admitted they agreed to help Carter's cousin, Aaron A., and another person named Albert T., break into the home of Brandon P. to steal marijuana plants, although they both claimed they only agreed to serve as lookouts. The attempted robbery failed, and Aaron, Albert, and Brandon all died at the scene from gunshot wounds.

Brandon lived in a "grandfather quarters" in the back of another residence. Brandon's and Albert's bodies were found inside the back residence. Aaron's body was located lying in the driveway of the front residence. Blood was smeared inside the residence, starting from the area where a stun gun was found and leading out the front door. Aaron was a major contributor for the DNA collected from the stun gun.

Multiple witnesses, including neighbors and a woman who resided in the front residence, testified they heard two separate and distinct series of gunshots, although there were inconsistencies in their testimony regarding the amount of time that elapsed between the series of shots.

3

The People argued that the second set of gunshots came from Carter when he shot Brandon after discovering his cousin Aaron had been shot and killed.[2] One witness (Beth B.) testified Carter directed her to drop him off near Brandon's residence, and then she heard three pops in quick succession.[3] Brandon suffered three gunshot wounds, one fatal.

In his police interview, Carter admitted hearing shots, trying to drag Aaron's lifeless body from the residence, and disposing of his clothing after leaving the scene. The murder weapon was not recovered, although there was evidence Carter disposed of a handgun before leaving the scene. The phone call log from Carter's phone was erased.

A firearms expert determined two different types of firearms were used, a .380 semiautomatic and a revolver (either a .38 special or .357 magnum). Brandon was shot with either a .38-caliber or a .357-caliber revolver. Five bullets were recovered from the crime scene which were suitable for examination. Two bullets were fired using the semiautomatic firearm recovered from the scene. Bullets recovered during a search of Carter's residence matched the other type of firearm that was used in the crime (a revolver).

---

[2] The victim, Brandon, was described as being an "excellent marksman" and had weapons in his home.

[3] Hall testified that he saw Carter after hearing both sets of gunshots, and Carter directed Beth to drop him off near Brandon's residence after that point. Hall then saw Carter go to the driveway and around the back of the residence; by the time Carter returned, Beth had left.

Carter called a friend, Benito D., to pick him and Hall up following the failed robbery (after Beth left). Carter was distraught about his cousin's death on the ride home. Carter eventually told Benito that Carter "got the guy" who killed his cousin. Benito informed the police that Carter told him he found Aaron dead, then heard the victim (Brandon) in the vicinity and shot and killed him. Benito's girlfriend separately told the police that Benito told her the same thing—i.e., that Carter said he was the one who shot Brandon.

When police detectives interviewed him, Carter provided inconsistent statements regarding his involvement. Audio recordings of his interviews were played for the jury. Carter eventually admitted to serving as a lookout for $300, but denied any involvement in the actual shootings. At one point, he stated two masked and armed individuals who were unknown to him were involved; they told him what to do, then they told him to get rid of his clothes when they drove him home.

As part of Hall's cross-examination, the jury learned he could face a range of 85-100 years in prison for the charged crimes and firearm enhancements, but he entered into a plea agreement that allowed him to receive an eight-year sentence if he testified truthfully.

*Procedural Background*

The San Bernardino County District Attorney's Office charged Carter and Hall by information with three counts of murder (§ 187, subd. (a)) for the homicides of Brandon (count 1), Albert (count 2), and Aaron (count 3), and first degree robbery (§ 211, count 5). There were various gang and firearm allegations attached to each count,

5

including the allegation in count 1 that Carter and Hall "personally and intentionally discharged a firearm, a handgun, which caused great bodily injury and death to Brandon [P.] within the meaning of Penal Code Section 12022.53(d)."

Hall withdrew his not guilty pleas pursuant to a plea agreement. He entered a plea of no contest to voluntary manslaughter of Brandon (§ 192, subd. (a)), a lesser included offense to murder, and to second degree robbery (§ 211). He also admitted the street gang enhancement (§ 186.22, subd. (b)(1)(C)) and a newly added enhancement for possessing a firearm in a street gang crime (§ 12021.5, subd. (a)).[4] In a confidential addendum, the People agreed to (1) strike the 10-year gang enhancement, reducing the maximum sentence to 15 years, and (2) join the defense in recommending an eight-year term if Hall cooperated and provided truthful testimony at Carter's trial. The parties further agreed that "the trial court retain[ed] its discretion to sentence the defendant within the aforementioned sentencing range of . . . three to . . . fifteen years regardless of said recommendation."

An amended information charged Carter with first degree murder as to Brandon, Albert, and Aaron (§ 187, subd. (a), counts 1, 2, and 3), and attempted first degree robbery (§§ 211, 664, count 4). The amended pleading retained the firearm enhancement attached to count 1 that Carter "personally and intentionally discharged a firearm," causing great bodily injury and death to Brandon (§ 12022.53, subd. (d)).

---

4    The People amended the information to add the enhancement under section 12021.5, subdivision (a) when Hall submitted his change of plea. Defense counsel stated for the record: "we're picking that charge because that gives us the number [of years] we're looking for."

Carter's case proceeded to jury trial the following month. The People presented two theories of first degree murder for Brandon's homicide—felony murder based on the underlying target felony of attempted robbery, and a theory of premeditation and deliberation. The jury was instructed on both theories. The trial court explained that the jury did not have to agree on a specific theory to find Carter guilty of first degree murder:

> "In Count 1, the defendant is being prosecuted for murder, as I indicated before, under two separate theories: Willful, deliberate and premeditated or felony murder.
>
> "Each theory of murder, as I explained, has different requirements. You may not find the defendant guilty of murder unless all of you agree that the People have proved that the defendant committed murder under at least one of these theories. You do not all have to agree on the same theory, but you must unanimously agree whether the murder is in the first or the second degree."

Consistent with the jury instructions, the verdict forms required the jury to agree on the degree of murder (first degree or second degree) if they returned a guilty verdict, but they were not required to agree on or specify the theory supporting their conviction.

If the jury found Carter guilty of Brandon's murder, it had to decide whether the People had proven the allegation that he personally discharged a firearm causing Brandon's death. To find the allegation true, the People had to establish: "1. The defendant personally discharged a firearm during the commission or attempted commission of that crime; [¶] 2. The defendant intended to discharge the firearm; [¶] AND [¶] 3. The defendant's act caused the death of a person who was not an accomplice to the crime."

7

The jury convicted Carter of first degree murder and attempted first degree robbery. The jury found the allegation that Carter personally and intentionally discharged a firearm to be "not true." The court declared a mistrial on counts 2 and 3 after the jury failed to reach a verdict and subsequently granted the prosecution's request to dismiss those charges.

At sentencing, the trial court found Carter had multiple objectives in engaging in the attempted robbery and in the victim's murder. In reaching this conclusion, the court found the evidence did not support Carter's claim that he merely served as a lookout for the attempted robbery. The court explained:

> "[A]lthough the defendant asserts that he was just a lookout and he had no participation, personal participation, in the killing of the victim, there are some disturbing evidence that points otherwise. And I cannot resolve that statement of defendant with the evidence that I heard—getting rid of the bloody clothing; what happened to the weapon; and this story that was made up [by defendant] about two individuals—none of those matches the description of a simple person that did the lookout for other people and had no idea."

Although the court acknowledged "it appears that the jury did proceed—probably proceeded with the [f]elony [m]urder [r]ule, because they found not true as to the personal use of a firearm," the court further noted the jury's determination on the firearm use enhancement was not necessarily inconsistent with the People's theory that the murder was premeditated and deliberated. The court stated: "On the other hand, there is no way for me to read the jurors' minds, because they could clearly go with the murder rule of he personally used a weapon and killed someone; however, they had enough doubt as to—reasonable doubt as to what weapon, whose weapon, what happened to the

8

weapon and, therefore, found it not true. It's not inconsistent, and I cannot get into the minds of the jurors."

Based on its review of the evidence presented at trial, the court ultimately concluded the "crimes and their objectives were predominantly independent of each other." The court therefore imposed a term of 25 years to life for Brandon's murder on count 1 and a three-year consecutive upper term for first degree attempted robbery on count 4, and declined to stay the punishment for attempted robbery pursuant to section 654.

Hall was sentenced after Carter. During Hall's sentencing hearing, the People moved to strike the 10-year gang enhancement in accordance with the plea agreement. Representing that Hall had testified truthfully at Carter's trial, the People joined defense counsel in recommending an eight-year sentence. The court found that Hall had testified truthfully and was therefore entitled to the benefit of his bargain. It declined, however, to accept the recommended eight-year prison term, instead imposing a 12-year sentence consisting of 11 years for voluntary manslaughter (§ 192, subd. (a)), a concurrent two-year term for second degree robbery (§ 211), and a consecutive one-year term for the street-gang firearm enhancement (§ 12021.5, subd. (a)).

## DISCUSSION

Carter raises a section 654 challenge to his consecutive sentences for attempted robbery and first degree murder. Hall challenges the court's imposition of a 12-year term at the original sentencing hearing and contends the court erred during resentencing. We

9

address these contentions in turn before addressing the parties' arguments in supplemental briefing regarding the impact of Senate Bill No. 1437.

I

*Carter's Section 654 Challenge*

Carter claims his consecutive sentences for attempted robbery and first degree murder violate section 654. He argues that "[t]he jury's finding that it was 'not true' . . . that Carter personally used a firearm to kill [Brandon] is completely inconsistent with a conviction of first degree murder on the theory of first degree, premeditated murder . . . ." He further argues "[b]ecause the jury found that Carter did not personally discharge a firearm at [Brandon], it follows, *ipso facto*, the jury also found Carter did not shoot [Brandon] with an independent criminal objective, such as vengeance." Based on these purported jury findings, Carter contends the jury necessarily determined Carter was guilty of first degree murder based solely on a felony-murder theory.[5]

We disagree with Carter's central premise that "the jury explicitly found that Carter did not shoot [Brandon]." Although the jury may have harbored reasonable doubt as to whether Carter personally used a firearm, the jury's "not true" finding was not an affirmative determination that Carter was not the shooter who murdered Brandon. Just as trial courts may rely on facts underlying verdicts of *acquittal* in making sentencing choices, the trial court here could rely on facts arguably *rejected* by the jury in returning a

---

5       Indeed, Carter contends it is "nearly certain" the jurors did not even reach the issue of premeditation and deliberation, opting instead to address felony murder first and rely only on Carter's confession to aiding and abetting the attempted robbery.

10

"not true" finding on a firearm use enhancement. Thus, the trial court could conclude that Carter was the shooter and was culpable for more than the single act of serving as a lookout for the attempted robbery. The jury's determination on the firearm use enhancement does not constrain the trial court's sentencing authority under section 654 in this case, particularly where the jury did not have to agree on any particular theory to support its first degree murder conviction.

A. *Section 654*

Section 654, subdivision (a), provides that "[a]n act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." " '[T]he purpose of section 654 "is to insure that a defendant's punishment will be commensurate with his culpability." ' " (*People v. Capistrano* (2014) 59 Cal.4th 830, 886 (*Capistrano*), overruled on other grounds by *People v. Hardy* (2018) 5 Cal.5th 56, 104.)

In addition to precluding multiple punishments for a single act, section 654 also precludes multiple punishments for an indivisible course of conduct. (*People v. Hester* (2000) 22 Cal.4th 290, 294 (*Hester*); *People v. Tarris* (2009) 180 Cal.App.4th 612, 626.) " ' "Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor. If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one." ' " (*Capistrano, supra,* 59 Cal.4th at p. 885.)

11

Whether a defendant had multiple intents or objectives is a question of fact for the sentencing court (*People v. Coleman* (1989) 48 Cal.3d 112, 162), and its findings will be upheld on appeal if supported by substantial evidence. (*People v. McGuire* (1993) 14 Cal.App.4th 687, 698.) "We review the trial court's determination in the light most favorable to the [People] and presume the existence of every fact the trial court could reasonably deduce from the evidence." (*People v. Jones* (2002) 103 Cal.App.4th 1139, 1143.)

B. *The Trial Court Did Not Violate Section 654*

Where a defendant is prosecuted *solely* on a theory of first degree felony murder, section 654 precludes punishment for both murder and the underlying felony. (See, e.g., *People v. Hensley* (2014) 59 Cal.4th 788, 828 [sentence for felony underlying first degree felony murder conviction must be stayed under section 654].) However, if the prosecution presents alternative theories—such as premeditation and felony murder—and there is evidence supporting a finding that the murder was premeditated, then the trial court may properly impose a sentence for both the murder and the felony. (*People v. Osband* (1996) 13 Cal.4th 622, 730-731 [affirming decision not to stay sentence for rape and robbery under section 654, where trial court made implicit finding that crimes involved more than one objective, even though it was unclear whether murder conviction was based on felony-murder or premeditation theory].)

Here, Carter's conviction for first degree murder was not based solely on the theory of felony murder. The jury was instructed on separate theories of first degree murder—premeditated and deliberated murder and felony murder—and it was further

12

instructed on theories of both direct liability and vicarious liability (aiding and abetting the commission of a murder and conspiracy). There was substantial evidence supporting the trial court's finding that the murder was premeditated because Carter shot Brandon three times to avenge his cousin's death—including Carter's own statement that night that he "got the guy" who killed Aaron. The court reasonably could have concluded Carter's objective in attempting to rob the victim was independent of his objective in killing the victim, thereby justifying multiple punishments under section 654.

The jury did not have to make an affirmative factual finding that Carter shot Brandon to return a guilty verdict on first degree murder, and the trial court did not need such an affirmative finding by the jury to exercise its sentencing discretion under section 654. Generally, "in the absence of some circumstance 'foreclosing' its sentencing discretion . . . , a trial court may base its decision under section 654 on *any* of the facts that are in evidence at trial, without regard to the verdicts." (*People v. McCoy* (2012) 208 Cal.App.4th 1333, 1340 (*McCoy*).) Indeed, the trial court "may even rely on facts underlying verdicts of *acquittal* in making sentencing choices." (*Ibid.*)

Carter argues that we are presented with a situation outside the scope of the general rule, such that the trial court cannot look to all the evidence introduced at trial. "[W]here there *is* a basis for identifying the specific factual basis for a verdict, a trial court cannot find otherwise in applying section 654." (*McCoy*, *supra*, 208 Cal.App.4th at p. 1339, italics added.) But this rule has been applied where the prosecution proceeded on a single factual basis at trial, as reflected in the charging documents, jury instructions, prosecutor's arguments, or verdict forms. (See *People v. Siko* (1988) 45 Cal.3d 820, 826

13

[where both the charging document and verdicts specified the lewd conduct as consisting of two specific sex offenses, and neither the jury instructions nor the closing argument suggested any other basis for the molestation counts, the People could not advance an alternative factual basis for those convictions based on the evidence at trial]; *People v. Jones* (2012) 54 Cal.4th 350, 359 [amended information and prosecutor's argument established defendant's convictions were based on single act for which defendant could only be punished once]; *People v. Bradley* (2003) 111 Cal.App.4th 765, 770 [where the prosecutor made an election to tender a single theory of guilt under which the defendant entertained a single objective, trial court could not "countermand the jury" and make a contrary finding].)  Here, there was no language in the charging document or verdict forms that narrowed the court's discretion—both referred generally to a charge of first degree murder.  While the prosecutor at times emphasized a felony-murder theory, evidence was presented to support both theories; the prosecutor argued both theories to the jury; the defendant likewise addressed both theories during closing arguments; and the jury was instructed on both theories.  Based on this record, the court could properly consider all of the evidence presented at trial to make its sentencing decision under section 654.  (See *People v. Centers* (1999) 73 Cal.App.4th 84, 100-101 [for purposes of applying section 654, trial court could properly make factual finding that there were multiple victims where neither the information nor the verdicts specified a particular victim of the burglary].)

The jury's "not true" finding is not a circumstance which prevents the trial court from considering "*any* of the facts that are in evidence at trial, without regard to the

verdicts." (*McCoy*, *supra*, 208 Cal.App.4th at p. 1340.) Carter contends we can discern the factual basis underlying the jury's verdict of first degree murder here because of how the jury addressed the firearm use enhancement. The dissenting opinion agrees, *post*, noting that "the weapon use finding . . . establishes the basis for the jury's first degree murder verdict." Because the jury returned a "not true" finding, Carter reasons, the jury necessarily convicted Carter of first degree murder based solely on a felony-murder theory—thereby foreclosing a sentence for both murder and attempted robbery. But the jury did not have to agree on any theory at all—it only had to agree whether the crime was first degree or second degree murder. We also believe Carter's proposed approach attempts to read too much into the jury's determination and thought processes. The jury's finding on the gun enhancement might have been no more than the product of compromise, mistake, or lenity. (See *People v. Lewis* (2001) 25 Cal.4th 610, 656 ["An inconsistency may show no more than jury lenity, compromise, or mistake, none of which undermines the validity of a verdict."]; *People v. Miranda* (2011) 192 Cal.App.4th 398, 405 (*Miranda*) ["[U]nder the inconsistent verdict doctrine, the 'not true' finding on the personal use enhancements does not inexorably lead to a finding that defendant was not the direct perpetrator of the substantive offenses."].)

Although these descriptions of a jury's actions arise in different contexts, such as where a jury returns inconsistent verdicts and we review the sufficiency of the evidence, the same logic applies when a trial court considers whether to stay a sentence pursuant to section 654. Just as "inconsistent verdicts are allowed to stand if the verdicts are otherwise supported by substantial evidence" (*Miranda*, *supra*, 192 Cal.App.4th at

15

p. 405), the trial court's sentencing determination should be allowed to stand based on the record before us irrespective of the jury's "not true" finding on the firearm use enhancement.

But even if we interpret the jury's verdicts as reflecting a conclusion that reasonable doubt precluded Carter's conviction of first degree murder on a theory of premeditation and deliberation, the trial court was still free to make its own determination under section 654 based on the evidence presented at trial. As the People correctly note, the applicability of section 654 is a factual question for the judge, not the jury. Section 654 is a "statute[] that mitigate[s] punishment." (*McCoy*, *supra*, 208 Cal.App.4th at p. 1339, fn. 6.) The judge is not "mak[ing] factual findings that *conflict* with the jury's conclusion" where, as here, the jury has been properly presented with multiple theories of first degree murder, the jury has convicted the defendant on a general charge of first degree murder, and the judge then applies a preponderance of the evidence standard to determine what specific role the defendant played in that murder. (See *People v. Towne* (2008) 44 Cal.4th 63, 87 (*Towne*) ["the trial court's consideration of conduct underlying counts of which the defendant has been acquitted is not inconsistent with the jury's verdict of acquittal, because a lower standard of proof applies at sentencing"]; *People v. Lewis* (1991) 229 Cal.App.3d 259, 264 [because "[c]ircumstances on which a trial court relies in making a sentencing choice must be established by a preponderance of the evidence," trial court could find defendant used weapon in commission of rape even though jury found that weapon use allegation not true].)

16

Even if the jury was not merely exercising lenity or striking a compromise here, at most the "not true" finding shows it harbored reasonable doubt about Carter's role—it does not show he was not the shooter. (*People v. Santamaria* (1994) 8 Cal.4th 903, 922 ["[T]he jury's not true finding on the enhancement allegation does not mean defendant did not use the knife, only that there was a reasonable doubt that he did."]; *People v. Thompson* (2010) 49 Cal.4th 79, 119-120 [jury's not true finding on a personal firearm use enhancement allegation did not necessarily mean jury based its murder verdict on a finding that defendant was an aider and abettor rather than the shooter; the jury may have been uncertain as to the exact role he played].)[6]

The trial court is not making an *inconsistent* finding here—the trial court is taking the jury's conviction on the first degree murder count and determining for sentencing purposes, under the lower standard of preponderance of the evidence, whether Carter harbored multiple criminal intents and objectives in attempting to rob and then murder the victim. There is no dispute that there *was* sufficient evidence to establish Carter shot the victim. We merely have a difference of opinion on whether the "not true" finding on the firearm use enhancement should be treated as an affirmative determination by the jury that forecloses the trial court's ability to impose multiple punishments under section 654.

---

6     A jury's finding on a *special circumstance* allegation is distinguishable. (See *People v. Berryman* (1993) 6 Cal.4th 1048, 1086 [involving special circumstance allegation of felony murder in the course of a rape; "jury's first degree murder and rape verdicts and its felony-murder-rape special-circumstance finding . . . under the instructions actually given, necessarily entail a unanimous determination of felony-murder-rape beyond a reasonable doubt"], overruled on other grounds by *People v. Hill* (1998) 17 Cal.4th 800, 823.)

We disagree with the dissenting opinion that the trial court's determination under section 654 violates the constitutional guarantees of either the Fifth or Sixth Amendments under the circumstances here.  As to the Fifth Amendment, "the United States Supreme Court has held that the double jeopardy clause does not preclude a trial judge from considering, at sentencing, conduct underlying a charge of which the defendant was acquitted.  [Citation.]  The high court reasoned that an acquittal merely establishes the existence of a reasonable doubt as to guilt.  Unless specific findings are made, 'the jury cannot be said to have "necessarily rejected" any facts when it returns a general verdict . . . .'  [Citation.]  Facts relevant to sentencing need be proved only by a preponderance of the evidence, and ' "an acquittal in a criminal case does not preclude the Government from relitigating an issue when it is presented in a subsequent action governed by a lower standard of proof." ' "  (*Towne*, *supra*, 44 Cal.4th at p. 86; accord, *In re Coley* (2012) 55 Cal.4th 524, 557.)  The same reasoning applies here, where the jury has made a "not true" finding that was essentially an acquittal of the firearm enhancement based on the instructions given to the jury.  The dissenting opinion characterizes the trial court's sentencing determination as "inconsistent" with the jury's verdict, but we disagree with that characterization.  A jury's finding that the prosecution has not proved a given fact beyond a reasonable doubt is not inconsistent with the trial court's finding that the prosecution did prove the same fact by a preponderance of the evidence.  (See *Coley*, at p. 557; *Towne*, at p. 86.)

Similarly, it is well-settled that the Sixth Amendment right to a jury trial does not apply to trial court findings under section 654.  (See, e.g., *People v. Deegan* (2016)

18

247 Cal.App.4th 532, 547-550 (*Deegan*); *People v. Solis* (2001) 90 Cal.App.4th 1002, 1021-1022 (*Solis*).) The Sixth Amendment requires a jury to find beyond a reasonable doubt "all facts legally essential to [a defendant's] punishment" (*Blakely v. Washington* (2004) 542 U.S. 296, 313), and that is precisely what occurred here. The jury found beyond a reasonable doubt that Carter had committed first degree murder and attempted first degree robbery. These findings exposed Carter to a maximum sentence of 25 years to life in prison for his murder conviction (§ 190, subd. (a)) and three years in prison for his attempted robbery conviction (§§ 213, subd, (a)(1)(B), 664, subd. (a)). The trial court could therefore impose that sentence without running afoul of the Sixth Amendment. (See *People v. Cleveland* (2001) 87 Cal.App.4th 263, 270-271; see also *Ring v. Arizona* (2002) 536 U.S. 584, 602; *People v. Black* (2007) 41 Cal.4th 799, 813.)

Although the trial court was called upon to make additional factual findings to determine whether to apply section 654, these additional findings do not violate the Sixth Amendment. " 'The question of whether section 654 operates to "stay" a particular sentence does not involve the determination of any fact that could increase the penalty for a crime beyond the prescribed statutory maximum for the underlying crime. . . .' [Citation.] . . . '[S]ection 654 is not a sentencing "enhancement." On the contrary, it is a sentencing "reduction" statute. Section 654 is not a mandate of constitutional law. Instead, it is a discretionary benefit provided by the Legislature to apply in those limited situations where one's culpability is less than the statutory penalty for one's crimes. Thus, when section 654 is found to apply, it effectively "reduces" the total sentence otherwise authorized by the jury's verdict. The [Sixth Amendment prohibition on judicial

19

factfinding], however, only applies where the nonjury factual determination *increases* the maximum penalty beyond the statutory range authorized by the jury's verdict.' " (*Solis*, *supra*, 90 Cal.App.4th at pp. 1021-1022; see *Deegan, supra*, 247 Cal.App.4th at p. 547; see also *In re Varnell* (2003) 30 Cal.4th 1132, 1142 [citing *Solis* with approval].) As the United States Supreme Court explained, in an analogous context, " '[J]udges in this country have long exercised discretion of this nature in imposing sentence *within* [*established*] *limits* in the individual case,' and the exercise of such discretion does not contravene the Sixth Amendment even if it is informed by judge-found facts." (*Dillon v. U.S.* (2010) 560 U.S. 817, 828-829; accord, *Alleyne v. U.S.* (2013) 570 U.S. 99, 116-117.)

In summary, we conclude the jury's "not true" finding as to the firearm use enhancement is not an affirmative finding that Carter was not the shooter, and it does not foreclose the trial court's discretion under section 654 to find that Carter did in fact shoot Brandon for purposes of sentencing. Based on the circumstances of this case—where multiple theories were presented to support a first degree murder conviction, the jury was not required to unanimously agree on any particular theory, and substantial evidence supports the court's sentencing determination that Carter shot Brandon with premeditation and deliberation—the trial court could properly find that Carter harbored multiple criminal intents and objectives in attempting to rob and then murder the victim. The trial court therefore did not err when it imposed a consecutive three-year sentence for Carter's attempted robbery conviction.

20

## II

### *Hall's Challenge to the Length of the Sentence Imposed*

Hall argues the trial court abused its discretion by sentencing him to 12 years in prison when the plea agreement specified eight years. Hall misconstrues the plea agreement, which gave the court discretion to sentence him within a range of three to 15 years. We therefore conclude the trial court did not abuse its sentencing discretion.

The addendum to the plea agreement stated that if Hall provided truthful testimony at Carter's trial, "the prosecution [would] join the defense in the recommendation that the defendant receive a sentence of . . . eight years in state prison." It further explained: "The parties understand and agree, however, that the trial court retains its discretion to sentence the defendant within the aforementioned sentencing range of . . . three to . . . fifteen years regardless of said recommendation." Defense counsel understood the terms of the agreement. At a hearing before Carter's trial, the court expressed concern with the terms of Hall's plea, which had been accepted by a different judge. Hall's attorney stated the parties were "in agreement" that if the court found Hall's testimony at Carter's trial truthful, "he's in that window of three to fifteen; and there would be recommendations from both parties for the sum of eight."

Consistent with that understanding, at sentencing, the prosecutor stated the court had discretion "to sentence Mr. Hall between 3 and 15 years" even though it joined defense counsel in recommending eight years. The court found Hall had testified truthfully at trial, if not completely, and that he was therefore entitled to the benefit of his bargain. It sentenced Hall to a total of 12 years.

21

"A negotiated plea agreement is a form of contract, and it is interpreted according to general contract principles." (*People v. Shelton* (2006) 37 Cal.4th 759, 767.) "If contractual language is clear and explicit, it governs." (*Ibid.*) " '[A] judge who has accepted a plea bargain is bound to impose a sentence within the limits of that bargain.' " (*People v. Segura* (2008) 44 Cal.4th 921, 931; see *People v. Superior Court* (*Sanchez*) (2014) 223 Cal.App.4th 567, 573 [court erroneously "imposed a sentence outside the limits of the bargain"].)

Notwithstanding the parties' recommendation for an eight-year term, there is no ambiguity that the plea agreement allowed the court to sentence Hall to a term of up to 15 years. The 12-year sentence imposed fell within the limits of the parties' bargain. Hall does not explain how the court purportedly abused its discretion in selecting 12 years. He appears to argue that the court failed to cite a fact or circumstance that allowed it to impose 12 years instead of eight. To the contrary, the court noted that although Hall's role was minimal, three people died in a violent manner. Because the

court imposed a sentence within the limits of the plea agreement, we reject Hall's challenge to imposition of a 12-year term.[7]

A different analysis applies to Hall's resentencing. After briefing on his appeal was complete, counsel notified us that Hall was resentenced in August 2017 and that there were possible errors relating to his resentencing. Granting Hall's request to augment the record with the corresponding minute order, reporter's transcript, and amended abstract of judgment, we allowed the parties to file supplemental briefs addressing potential errors at resentencing. We agree with the parties that at least two errors occurred.

At Hall's original sentencing hearing in March 2017, the court imposed an 11-year upper term for voluntary manslaughter (count 1), a two-year term for attempted robbery (count 5), and a one-year term for the street-gang firearm enhancement attached to count 5. It ran the robbery sentence concurrent to the principal term but ran the attached enhancement *consecutively* to arrive at a total commitment of 12 years. As the parties

---

[7]    In his second motion for supplemental briefing addressing Senate Bill No. 1437, Hall argued for the first time that resentencing was required because the trial court failed to consider the sentencing goals of "rehabilitation and restorative justice" articulated in section 1170, subdivision (a)(1). This language was added to section 1170 effective January 1, 2017, before Hall was sentenced and well before the opening briefs on appeal. This argument was not made in Hall's opening or reply briefs and is beyond the scope of the Senate Bill No. 1437 issue on which we permitted a second round of supplemental briefing. (See *People v. Price* (2017) 8 Cal.App.5th 409, 450, fn. 21 (*Price*) [finding forfeiture on this basis].) Even if the argument had been timely made, these broad sentencing objectives do not provide a basis to challenge the court's sentence. As the People note, a sentencing court " 'is presumed to have considered all relevant factors unless the record affirmatively shows the contrary.' " (*People v. Sperling* (2017) 12 Cal.App.5th 1094, 1102.)

23

agree, this was technically error. The firearm enhancement attached to the underlying offense, so the concurrent term for robbery required a concurrent term for the enhancement. (*People v. Bui* (2011) 192 Cal.App.4th 1002, 1016; *People v. Mustafaa* (1994) 22 Cal.App.4th 1305, 1310-1311.)

This error did not *require* correction: Hall was sentenced pursuant to a plea agreement that did not require the imposed term to be achieved in any particular way. (*Hester*, *supra*, 22 Cal.4th at p. 295 [where "defendants have pleaded guilty in return for a *specified* sentence, appellate courts will not find error even though the trial court acted in excess of jurisdiction in reaching that figure, so long as the trial court did not lack *fundamental* jurisdiction"]; *People v. Jones* (1989) 210 Cal.App.3d 124, 136 [although the technically unauthorized sentence exceeded the court's jurisdiction, the parties waived their rights to complain given the plea agreement].) Nevertheless, the court was not barred from attempting to fix the error. A trial court generally lacks jurisdiction to resentence a defendant after the execution of a sentence has begun, but "an unauthorized sentence may be corrected at any time." (*People v. Turrin* (2009) 176 Cal.App.4th 1200, 1204-1205 (*Turrin*).) The court was also statutorily authorized to recall Hall's original sentence and impose a new sentence "no greater than the initial sentence" at any time upon the recommendation of the secretary or Board of Parole Hearings. (§ 1170, subd. (d)(1).)[8]

---

[8] At resentencing the court indicated that the Department of Corrections had sent a letter, but we do not have a copy of the letter or otherwise know what the issues raised were.

24

At resentencing, the court expressed its intention to "make some readjustments" to correct the issues and reach the same 12-year aggregate term. It kept the 11-year upper term for count 1, imposed a one-year consecutive term for count 5 (calculated as one-third the three-year middle term), and imposed a two-year concurrent middle term for the street-gang firearm enhancement. In pronouncing the judgment, the court noted "his total prison [term] is twelve years, the same as what it was before."

The court made two errors in reaching this result. The first error is clerical. (*Turrin*, *supra*, 176 Cal.App.4th at p. 1205 ["[a] clerical error is one that is made in recording the judgment"].) The amended abstract of judgment, dated October 18, 2017, shows an eight-month consecutive sentence for the enhancement (calculated as one-third the middle two-year term), resulting in a total term of 12 years, eight months.[9] As the parties agree, the additional eight-month term does not comport with the oral pronouncement of the judgment or the minute order. Where there is "an evident discrepancy between the abstract of judgment and the judgment that the reporter's transcript and the trial court's minute order reflect, the appellate court itself should order the trial court to correct the abstract of judgment." (*People v. Mitchell* (2001) 26 Cal.4th 181, 188.) But as the parties further note, correcting the clerical error highlights the underlying sentencing error: the sentence for the street-gang firearm enhancement had to run *consecutively* to the substantive robbery term to which it attached. (§ 1170.1, subd. (d) ["the court shall also impose, in addition and consecutive to the offense of

---

[9] The amended abstract of judgment mistakenly designates the 11-year upper term on count 1 by "M" instead of "U."

which the person has been convicted, the additional terms provided for any applicable enhancements"].)

We may at any time correct obvious legal errors made at sentencing that may be corrected without referring to factual findings in the record or remanding for further findings. (*Turrin*, *supra*, 176 Cal.App.4th at p. 1205.) Such errors present pure questions of law which are correctable independent of any factual issues presented in the record. (*Ibid.*) The record is clear that the trial court intended to impose an aggregate term of 12 years and did not intend for the enhancement to extend that total. Accordingly, we agree with the parties that the proper resolution is to strike the eight-month term of punishment for the street-gang firearm enhancement so that Hall serves the 12-year term previously imposed. (See § 1260 [permitting modification of judgment on appeal].) We do so under section 1385, subdivision (b)(1), leaving the conviction for the enhancement in place.

III

*Legislative Amendments to Felony Murder (Senate Bill No. 1437)*

Before this case could be argued, Senate Bill No. 1437 was signed into law to effectuate certain changes to felony murder and murder under the natural and probable consequences theory. Hall and Carter requested the opportunity to file supplemental briefs addressing the impact of these reforms to their appeals. We address their contentions in turn.

Effective January 1, 2019, Senate Bill No. 1437 amended sections 188 and 189 and added a new procedure for qualified individuals to seek resentencing. (Sen. Bill

26

No. 1437 (2017-2018 Reg. Sess.), §§ 2-4.) Under amended section 188, subdivision (a)(3), "[m]alice shall not be imputed to a person based solely on his or her participation in a crime." Amended section 189 limits first degree murder liability based on a felony-murder theory to a person who: (1) was the actual killer; (2) although not the actual killer, intended to kill and assisted the actual killer in the commission of first degree murder; or (3) was a major participant in the underlying felony who acted with reckless indifference to human life.

Newly enacted section 1170.95 creates a mechanism for eligible defendants to seek resentencing if they believe they could not be convicted of first or second degree murder under the amended versions of sections 188 and 189. Under subdivision (a) of section 1170.95, "[a] person convicted of felony murder or murder under a natural and probable consequences theory" may petition the trial court to vacate a murder conviction and be resentenced on any remaining counts if the following three conditions apply:

> "(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine.

> "(2) The petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder.

> "(3) The petitioner could not be convicted of first or second degree murder because of changes to [Penal Code] Section[s] 188 or 189 made effective January 1, 2019."

To seek resentencing under this new procedure, a defendant must file a petition with the sentencing court and include a declaration that he or she meets the above criteria

27

and any request for counsel. (§ 1170.95, subd. (b)(1)(A).) If the court determines that the petitioner has made a prima facie showing of eligibility, it must issue an order to show cause and hold a hearing to determine whether to vacate the murder conviction and recall the sentence. (§ 1170.95, subds. (c), (d)(1).) At that hearing, the prosecutor bears the burden of proving beyond a reasonable doubt that the petitioner is *ineligible* for resentencing. (§ 1170.95, subd. (d)(3).) "The prosecutor and the petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens." (*Ibid*.)

Carter argues we should either stay the appeal and issue a limited remand or expedite the appeal to allow the trial court to expeditiously address his entitlement to resentencing. Alternatively, he urges us to find him eligible for resentencing on direct appeal. The People do not oppose a stay of appellate proceedings but maintain that Carter may not bypass the procedure in section 1170.95 and have his claim decided by direct appeal.

We agree with the latter contention that Carter may not raise his claim by direct appeal.[10] (See *People v. Anthony* (2019) 32 Cal.App.5th 1102, 1147; *People v. Martinez* (2019) 31 Cal.App.5th 719, 727-728.) Senate Bill No. 1437 provides retroactive benefits for defendants convicted of first degree murder under a felony-murder theory or a natural and probable consequences theory. But it sets forth a detailed procedure for eligible

---

[10] Because we believe judicial economy would not be served by a stay of appellate proceedings and have addressed the Senate Bill No. 1437 arguments raised by both defendants, we deny Carter's requests to stay or expedite the appeal.

defendants to seek relief.  In *People v. Conley* (2016) 63 Cal.4th 646 (*Conley*) and *People v. DeHoyos* (2018) 4 Cal.5th 594 (*DeHoyos*), the Supreme Court addressed whether defendants whose judgments were not yet final when Propositions 36 and 47 (respectively) took effect were entitled to automatic resentencing by direct appeal, or if they instead had to seek resentencing before the trial court using the statutory petitioning procedures.  In both contexts, the court concluded the statutory procedures provided the exclusive means for a defendant to seek relief.  (*Conley*, at p. 652; *DeHoyos*, at p. 597.)  To hold otherwise would improperly exempt such defendants from safeguards designed to ensure judicial evaluation of the impacts of resentencing on public safety.  (*Conley*, at p. 659; *DeHoyos*, at p. 603.)

Carter attempts to distinguish *Conley* and *DeHoyos* by arguing that section 1170.95, unlike Propositions 36 and 47, does not mandate a separate inquiry of a defendant's dangerousness or any other substantive requirement for retroactive relief.  To the contrary, as the People point out, section 1170.95 vests the trial court with a fact-finding role to determine whether the prosecution has proven beyond a reasonable doubt that a defendant is ineligible for resentencing.  (§ 1170.95, subd. (d)(3).)  At the hearing, the parties may, for example, offer evidence as to whether Carter was a "major participant" in the underlying robbery, or whether he "acted with reckless indifference to human life."  (§ 189, subd. (e)(3).)  Significantly, the prosecutor and petitioner are permitted to "offer new or additional evidence to meet their respective burdens." (§ 1170.95, subd. (d)(3).)

Here, as in *Conley* and *DeHoyos*, the nature of the petition process created by Senate Bill No. 1437 "call[s] into question the central premise underlying the *Estrada* presumption" that when the legislature lessens the punishment for a crime, it is reasonable to infer that imposing the lighter penalty in all cases will sufficiently serve the public interest. (*Conley*, *supra*, 63 Cal.4th at p. 658; *DeHoyos*, *supra*, 4 Cal.5th at p. 602.) We follow the reasoning in *Conley* and *DeHoyos* to conclude that the petitioning procedure in section 1170.95 provides the exclusive means for a defendant to seek relief under Senate Bill No. 1437. For this reason, we also deny Carter's request to bypass the initial procedural step by "find[ing] that, based on the record on appeal, Carter has made a prima facie showing that he 'falls within the provisions of [section 1170.95].' "

Hall's conviction raises additional issues. There may be tension in the statutory text as to whether resentencing is available to a person who pleads guilty or no contest to a less serious form of homicide—i.e., manslaughter—to avoid trial on a felony-murder theory. Language in subdivision (a)(2) of section 1170.95 could be read to support that view—an eligible defendant must be someone who *either* "was convicted of first or second degree murder following a trial *or accepted a plea offer* in lieu of a trial at which [he or she] could be convicted for first degree or second degree murder." (Italics added.) The preamble to Senate Bill No. 1437 likewise suggests at least some category of plea bargaining defendants are eligible to seek relief:

> "This bill would provide a means of vacating the conviction and resentencing a defendant when a complaint, information, or indictment was filed against the defendant that allowed the prosecution to proceed under a theory of first degree felony murder or murder under the natural and probable consequences doctrine, the

30

> defendant was sentenced for first degree or 2nd degree murder *or accepted a plea offer in lieu of a trial at which the defendant could be convicted for first degree or 2nd degree murder*, and the defendant could not be charged with murder after the enactment of this bill."  (Italics added.)

On the other hand, introductory language in section 1170.95, subdivision (a) suggests that only "[a] person convicted of felony murder or murder under a natural and probable consequences theory may file a petition . . . ."

In his proposed supplemental brief, Hall argued he was ineligible for resentencing under Senate Bill No. 1437 based on the introductory language in section 1170.95, subdivision (a) because he was neither "convicted of felony murder or murder under a natural and probable consequences theory."  He pointed out that a potential disparity with Carter in light of Senate Bill No. 1437 underscored his need for resentencing.  We issued an order accepting Hall's supplemental brief and inviting further briefing as to the potential tension in the statute as to Hall's eligibility for resentencing under Senate Bill No. 1437.

In their responsive supplemental brief, the People argued that as with Carter, Hall's sole avenue for relief was to file a petition to recall his sentence before the trial court pursuant to section 1170.95.  To the extent we reached his claim, the People argued that Hall, as someone who pled guilty to voluntary manslaughter, was ineligible for resentencing.  They pointed to various parts of Senate Bill No. 1437 and selected legislative history (of which they seek judicial notice) that reference the need to limit *murder* liability without mentioning those convicted of *manslaughter*.  In addition, the People pointed to substantive differences between first degree felony murder and

voluntary manslaughter to argue that Senate Bill No. 1437 was unconcerned with the latter.[11]

On reply, Hall reconsidered his position.  He pointed to statutory language and policy rationales to argue that Senate Bill No. 1437 *does* cover defendants who plead guilty or no contest to manslaughter in lieu of trial on a felony-murder theory.  Hall noted that denying relief to defendants like him could lead to absurd results, "a potential outcome in this very case" given Carter's entitlement to seek relief.  He further argued that "[t]he record belies any factual basis for Hall's conviction on any theory of voluntary manslaughter" because "[t]he killings were not as a result of a heat of passion, unreasonable self-defense, or vehicular manslaughter."  (§ 192.)  Hall suggested the plea bargain "was one of convenience or necessity for the prosecution who wanted Hall's

---

[11]    "Felony murder differs from both malice murder and voluntary manslaughter in significant ways.  It entails commission of an inherently dangerous felony, requires no proof of intent or conscious disregard of life, and renders irrelevant defenses that mitigate malice such as provocation or self-defense. [Citations.]  Voluntary manslaughter thus is not a lesser included offense of felony murder."  (*Price*, *supra*, 8 Cal.App.5th at pp. 429-430.)

testimony against Carter and one of salvation for Hall who grabbed a lifeline to avoid a potential life sentence."[12]

We recognize there may be a potential incongruity in the statute's application in this case, but we agree with the People that we need not resolve the issues of statutory interpretation.[13] Assuming Hall seeks resentencing under Senate Bill No. 1437, he must follow the same procedure as Carter. It will be up to the trial court to determine whether he has made a prima facie showing that he falls within the scope of section 1170.95. At that stage, Hall may attempt to establish he is entitled to relief—on the basis that the statute refers to petitioners who "accepted a plea offer" in lieu of trial for murder, without specifying *what crime* an eligible defendant must have pled to. We decline to provide an

---

[12] Section 1192.5 requires a trial court to "cause an inquiry to be made of the defendant to satisfy itself that the plea [of guilty or no contest] is freely and voluntarily made, and that there is a factual basis for the plea." A primary reason for requiring a factual basis inquiry is to address the situation in which an innocent defendant might plead guilty or no contest based on the disparity in punishment between conviction by plea and by trial. (*People v. Hoffard* (1995) 10 Cal.4th 1170, 1182.) Here, the parties stipulated that the police reports and preliminary hearing transcript provided a factual basis for Hall's plea, and the court accepted the plea on that basis. In any event, absent a certificate of probable cause we cannot entertain any challenge to the factual basis for Hall's plea. (*People v. Marlin* (2004) 124 Cal.App.4th 559, 571.) Indeed, there is a split of authority on whether such a claim may be brought on appeal even with a certificate. (*People v. Voit* (2011) 200 Cal.App.4th 1353, 1365; *People v. Palmer* (2013) 58 Cal.4th 110, 115 ["We need not decide whether *Marlin* or *Voit* states the better view"].)

[13] For a defendant like Carter convicted of murder, if the prosecution cannot prove beyond a reasonable doubt that the defendant would still be guilty of murder even after the amendments to sections 188 and 189, the murder conviction will be vacated. (§ 1170.95, subd. (d)(3).) There is no provision allowing retrial for some lesser form of homicide. The defendant is merely resentenced on any remaining charges. (§ 1170.95, subd. (d)(3).) Yet if the section 1170.95 procedure does not apply to defendants like Hall who pled to manslaughter in the face of a murder charge, they would actually be *worse off* than if they had pled guilty to murder.

33

advisory opinion definitively resolving Hall's entitlement to relief. (*People v. Chadd* (1981) 28 Cal.3d 739, 746 ["We will not, of course, adjudicate hypothetical claims or render purely advisory opinions."]; *People v. Slayton* (2001) 26 Cal.4th 1076, 1083-1084 [avoiding advisory opinion on hypothetical facts].) We instead leave the question of Hall's eligibility to the trial court in the first instance.[14]

## DISPOSITION

The judgment as to Carter is affirmed.

---

[14]  Because we express no opinion as to Hall's eligibility for resentencing, we deny the People's request for judicial notice as to legislative history materials regarding Senate Bill No. 1437. (*People v. Blount* (2009) 175 Cal.App.4th 992, 995, fn. 2 [denying judicial notice as to matters irrelevant to appeal].)

The judgment as to Hall is modified to strike the term imposed on the street-gang firearm enhancement (Pen. Code, § 12021.5, subd. (a)).  As modified, the judgment is affirmed.  The clerk of the superior court is directed to prepare an amended abstract of judgment as to Hall that (1) strikes the eight-month term for the street-gang firearm enhancement, and (2) indicates that the 11-year term for voluntary manslaughter (count 1) reflects the upper term.  A certified copy of the amended abstract of judgment shall be forwarded to the Department of Corrections and Rehabilitation.


GUERRERO, J.

I CONCUR:



IRION, Acting P. J.


35

DATO, J., Concurring and Dissenting.

I fully concur in the majority opinion except for the discussion concerning Penal Code section 654[1] and its application to defendant Carter's convictions for first degree felony murder and attempted robbery. In that regard, it is well-settled that where a defendant is convicted of first degree murder based on a felony-murder theory, section 654 prohibits separate punishment for both the murder and the underlying felony because both convictions are based on the same indivisible course of conduct. As it is clear in this case that the jury based its murder verdict on a felony-murder theory, rejecting the prosecution's alternative theory of premeditated first degree murder, the sentencing judge was not at liberty to make a factual finding inconsistent with what the jury had already determined was a failure of proof by the People. Indeed, permitting the trial court to find by a mere preponderance of the evidence that Carter committed a premeditated first degree murder would alter the basis for the conviction as determined by the jury, raising significant Fifth and Sixth Amendment concerns.

A

Section 654 is an integral part of California's scheme of criminal punishment. In it, the Legislature has declared that where a single act or indivisible course of conduct violates multiple statutes, the defendant "may be punished for any one of such offenses but not for more than one." (*Neal v. State of California* (1960) 55 Cal.2d 11, 19.) If

---

[1]     All further statutory references are to the Penal Code.

section 654 applies, "the trial court must stay execution of the sentence on the convictions for which multiple punishment is prohibited." (*People v. Correa* (2012) 54 Cal.4th 331, 337.) Here, the trial court concluded that section 654 did not apply because "[t]he crimes and their objectives were predominantly independent of each other." The court's comments, while somewhat confusing,[2] express disagreement with the notion that Carter "had no . . . personal participation, in the killing of the victim."

Pursuant to section 654, it has long been the rule that where a murder conviction is based on a felony-murder theory, the defendant cannot be sentenced separately for both the murder and the predicate felony involving a single victim. This is because both the murder and the underlying felony are incident to one objective and thus arise out of a single act or course of conduct. Courts routinely stay the sentence for the predicate felony under section 654 in these circumstances. (See, e.g., *People v. Montes* (2014) 58 Cal.4th 809, 898; *People v. Hensley* (2014) 59 Cal.4th 788, 828; *People v. Neely* (2009) 176 Cal.App.4th 787, 800.)

In applying section 654, we examine the basis for the two convictions to determine whether both arise out of the same act or course of conduct. Thus in *People v. Siko*

---

[2] Commenting that "I cannot get into the minds of the jurors," the court expressed the view that the jury could have found the weapon use allegation not true if it concluded that Carter "personally used a weapon and killed someone" but had a "reasonable doubt as to what weapon, whose weapon, what happened to the weapon." To the contrary, however, the jury was instructed that to find the allegation true, the People only had to establish three things: "1. The defendant personally discharged a firearm during the commission or attempted commission of [the] crime; [¶] 2. The defendant intended to discharge the firearm; [¶] AND [¶] 3. The defendant's act caused [Brandon's] death . . . ."

(1988) 45 Cal.3d 820 (*Siko*), a defendant was convicted of rape, sodomy, and lewd acts on a nine-year-old victim; the lewd acts conviction was explicitly based on the rape and the sodomy. (*Id.* at p. 826.) The trial court imposed full sentences on all three counts, and the Supreme Court concluded this violated section 654. (*Siko*, at pp. 823, 826.) The People were not able to avoid this result by claiming the lewd acts conviction *could* rest on the defendant's separate acts of removing the victim's underwear or tying a handkerchief around her mouth. Although that evidence was adduced at trial, the *Siko* court focused on the *basis for the conviction*, concluding there was "no showing that the lewd-conduct count was understood in this fashion" given the instructions and closing arguments. (*Id.* at p. 826.) Thus, the sentencing court could not make findings for purposes of section 654 that were at odds with the plain import of the jury's verdict.

A similar result was reached in *People v. Jones* (2012) 54 Cal.4th 350. There, a defendant was convicted under three statutes that barred a felon from carrying a loaded and concealed firearm. Because the record showed that *the jury* based all three convictions on a single act, section 654 prohibited punishment for more than one of those crimes. (*Jones*, at p. 352.) The People were not permitted to construct an alternative factual basis for one of the convictions from the trial evidence, since the "record establishe[d] that the jury convicted defendant of each crime due to his being caught with the gun in the car . . . , not due to any antecedent possession." (*Id.* at p. 359.) And it was not within the sentencing court's power to make findings inconsistent with the jury's verdict.

3

The People contend this case is different and that section 654 does not apply because here the jury was presented with two *alternative* theories of first degree murder, both of which were supported by the evidence.  They contend that where there is sufficient evidence to support each of two alternative murder theories,[3] only one of which would run afoul of section 654, California law generally permits a sentencing court to determine that separate punishment of both the murder and the underlying felony is appropriate based on a finding that the defendant entertained multiple intents and objectives.  (See *People v. Osband* (1996) 13 Cal.4th 622, 731 (*Osband*).)  Had the jury simply been instructed on alternative theories of first degree murder—premeditation and felony murder—and returned an undifferentiated verdict of guilty, we would have no way of knowing which theory the jury relied on, or indeed whether some jurors relied on one and others relied on the second.  Under those circumstances, case precedent would ordinarily allow the sentencing court to find by a preponderance of the evidence that Brandon's murder was premeditated and deliberate because such a finding would not be inconsistent with the demonstrated *basis for the conviction* as reflected in the *jury's verdict*.  (See *People v. McCoy* (2012) 208 Cal.App.4th 1333, 1339-1340 (*McCoy*).)

---

3    In *People v. Chapman* (1968) 261 Cal.App.2d 149, as in this case, the jury was instructed on both premeditated and deliberate murder and felony murder.  But in *Chapman*, the only theory supported by the evidence was felony murder.  (*Id.* at pp. 179-180.)  As a result, section 654 prevented the court from sentencing the defendant for both robbery and first degree murder.  (*Chapman*, at pp. 179-180)  The only functional difference between this case and *Chapman* is that here, while there may have been substantial evidence to support an alternative theory of premeditated first degree murder, the jury ultimately concluded that the People failed to meet their burden of proof.  In both cases the *basis* for the murder conviction was felony murder.

But there is a further limit to *when* the trial court may find which of two alternative theories of murder the defendant committed, a limit that has its roots in fundamental constitutional precepts. As *Osband* instructs, the trial court is permitted to make independent findings for purposes of section 654 only when "it is *unknown* whether [the defendant] was found guilty of first degree murder on a theory of felony murder or premeditation and deliberation." (*Osband*, *supra*, 13 Cal.4th at p. 730, italics added.) On the other hand, a sentencing court addressing a section 654 issue "cannot countermand the jury" and make a factual finding contrary to the jury's verdict. (*People v. Bradley* (2003) 111 Cal.App.4th 765, 770 (*Bradley*).) Distilling *Siko*, *Bradley*, and a handful of other Court of Appeal decisions, *McCoy* concisely articulated the general rule: "[I]n the absence of some circumstance 'foreclosing' its sentencing discretion . . . , a trial court may base its decision under section 654 on *any* of the facts that are in evidence at trial, without regard to the verdicts." (*McCoy*, *supra*, 208 Cal.App.4th at p. 1340.) But "where there *is* a basis for identifying the specific factual basis for a verdict, a trial court cannot find otherwise in applying section 654." (*Id.* at p. 1339, italics added.)

In this case, we *know* the specific factual basis for the verdict. The jurors were instructed on and the prosecution argued two theories of first degree murder based on two—and only two—factual scenarios: (1) the premeditated and deliberate murder of Brandon by use of a firearm, and (2) felony murder as a result of Carter's admitted

participation in the attempted robbery.[4] During closing arguments, the prosecutor premised her premeditated murder theory on Carter being the actual shooter. There was evidence at trial from which the jury could find that Carter personally shot and killed Brandon after entering the house and finding his cousin dead. But the prosecutor's primary theory was that Carter was guilty of first degree felony murder based on his conceded role in serving as a lookout for the underlying robbery attempt. Noting that the facts on the felony-murder theory were "uncontroverted," she told jurors they should "sign verdict form 1-A, guilty of first degree murder" and be "done."

A weapon use allegation was attached to the murder charge in count 1. Once the jury found Carter guilty of Brandon's murder, it had to decide whether Carter "personally and intentionally discharged a firearm, a handgun, causing great bodily injury or death." The jury was told that the People bore the burden of proving the firearm use allegation beyond a reasonable doubt. (CALCRIM No. 3149.)

---

[4] For the first time at oral argument on appeal, the People sought to identify a third theory of first degree murder unaffected by the firearm use finding: that Carter might have directed or encouraged Aaron or Albert to shoot Brandon. This theory is not supported by the evidence. If the jury believed Carter went inside the house before Brandon was murdered, the only evidence as to what he did there was his own alleged statement that *he* "got the guy" who killed his cousin. Although aiding and abetting was included among the general instructions on liability principles (CALCRIM No. 401), the prosecutor only mentioned this concept to discuss Carter's role in the *robbery*, not as a separate theory of premeditated and deliberate murder. The prosecutor's sole theory of premeditated murder was that Carter entered the residence *after* Aaron and Albert were killed; he then shot and killed Brandon. Because there is "no showing that the [murder] count was understood" at trial in the manner the People now suggest on appeal, we must disregard this post hoc theory. (*Siko*, *supra*, 45 Cal.3d at p. 826.)

6

Ultimately, the jury convicted Carter of first degree murder, but unanimously concluded that the prosecution failed to prove he "personally and intentionally discharged a firearm."  By finding the firearm use allegation attached to the murder count "not true," the jurors necessarily harbored at least a reasonable doubt as to whether Carter was the actual shooter.  To be sure, the "not true" finding does not reflect an *affirmative* finding by the jury that Carter was not the actual shooter.  It merely reflects the jury's determination that there was insufficient evidence to find he *was* the actual shooter beyond a reasonable doubt.  (*People v. Santamaria* (1994) 8 Cal.4th 903, 922 (*Santamaria*).)  But in the particular context of this case, the weapon use finding attached to the murder count carries significant implications for section 654 because it establishes the basis for the jury's first degree murder verdict.  The sole theory of premeditated murder offered by the prosecution relied on Carter being the actual shooter.  So the jury's weapon use finding means it necessarily based its first degree murder conviction on the felony-murder theory.  (See *Santamaria*, at p. 931 (conc. & dis. opn. of Mosk, J.) ["Obviously, *no* juror can determine that a defendant is guilty of a crime beyond a reasonable doubt on a theory dependent on a necessary fact as to which *each and every* juror has a reasonable doubt."].)

The "not true" verdict on firearm use has the same effect here as a special jury finding that the murder conviction is based on the felony-murder theory.  The majority opinion acknowledges that binding section 654 precedent requires we look to objective indicators to determine the basis for the conviction—prosecutorial arguments, charging documents, instructions, and verdict forms.  If we are to look to these indirect indicators

to determine what the jury did, why would we not look to and rely upon a specific finding made *by the jury* pertaining to the very conviction—first degree murder—we are attempting to evaluate?

On this record, there *is* a basis to identify the specific factual predicate for the jury's first degree murder verdict. (*McCoy, supra,* 208 Cal.App.4th at p. 1339.) Because we know the jury unanimously found guilt based on felony murder—and unanimously *rejected* guilt based on a premeditated shooting with a firearm—the trial court could not make the contrary finding by a preponderance of the evidence that Carter harbored a premeditated intent to kill separate and apart from his intent to assist in the underlying attempted robbery. To allow such a finding would be to permit the trial judge to change the basis of the defendant's conviction as determined by the jury.[5]

---

[5]     This case is distinguishable from *Santamaria*, *supra*, 8 Cal.4th 903 (a case that in any event did not involve section 654). Defendant Santamaria was charged with robbery and murder. There were a total of four factual theories of murder: two based on premeditation and deliberation (either as the direct stabber or aider and abettor of the stabber) and two based on felony murder (either from his role as a direct perpetrator or aider and abettor in the robbery). The jury convicted Santamaria of first degree murder but found the knife use allegation "not true." The weapon finding did not foreclose the possibility that jurors were convinced beyond a reasonable doubt that he *either* used a knife or helped someone who did, but could not say beyond a reasonable doubt *which* of those events occurred. (*Santamaria*, at p. 919 ["individual jurors themselves need not choose among the theories, so long as each is convinced of guilt"].) The jury here was not urged to find premeditation under an aiding and abetting theory. (Fn. 4, *ante*.) Nor are we presented with a scenario in which jurors could have been convinced of Carter's guilt of first degree murder but unsure whether it was by premeditation and deliberation *or felony murder*. Carter admitted serving as a lookout in the robbery attempt resulting in Brandon's death. The verdicts thus reflect unanimity beyond a reasonable doubt on both premeditated murder (no) and felony murder (yes).

This result is not changed by the rule allowing inconsistent verdicts. (See *Santamaria, supra,* 8 Cal.4th at p. 911; *People v. Avila* (2006) 38 Cal.4th 491, 600.) That rule, often invoked on sufficiency-of-the-evidence review, draws its logic from the fact that a defendant who receives the benefit of acquittal on one count may fairly be made to accept the burden of an inconsistent conviction. (*Avila*, at p. 600, citing *United States v. Powell* (1984) 469 U.S. 57, 69; see § 954.) To apply that concept here would not *allow* inconsistent jury verdicts; there is nothing inconsistent about what this jury did. It would rather *create* an inconsistency between the verdict and the sentence by permitting the court to change the basis for the defendant's conviction as found by the jury.

B

I think it reasonably clear that in deciding whether to apply section 654, California precedent does not permit sentencing courts to make factual findings by a preponderance of the evidence that are inconsistent with determinations already made by the jury using a reasonable doubt standard. Relying largely on cases that do not involve section 654, the majority reach a different conclusion. (See *People v. Towne* (2008) 44 Cal.4th 63, 85 (*Towne*) [court may consider evidence underlying acquitted counts in selecting sentence within a range]; *People v. Lewis* (1991) 229 Cal.App.3d 259, 264 ["not true" finding on weapon use allegation does not preclude court from considering weapon use to impose full consecutive sentence].) Even if there is uncertainty in the case law, I submit there are additional important reasons why section 654 should apply to preclude multiple punishments in this narrow context, and thus avoid opening a proverbial can of worms.

9

The Sixth Amendment right to trial by jury, as interpreted by the United States Supreme Court in *Apprendi v. New Jersey* (2000) 530 U.S. 466 (*Apprendi*), generally requires that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (*Id.* at p. 490.)  California courts have consistently held that *Apprendi* does not apply to factual findings under section 654 because the statute envisions a sentence *reduction*, not an enhancement.  (See, e.g., *People v. Deegan* (2016) 247 Cal.App.4th 532, 547 (*Deegan*); *People v. Cleveland* (2001) 87 Cal.App.4th 263, 267.)  That said, none of those cases have involved situations in which the sentencing judge attempted to make factual findings inconsistent with the jury's determination.[6]  Moreover, in *Blakely v. Washington* (2004) 542 U.S. 296, the Supreme Court clarified that "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict . . . .* [Citations] . . . When a judge

_____

[6]    I recognize that in *People v. Black* (2005) 35 Cal.4th 1238, 1262 (*Black I*), the Supreme Court held there was no jury trial right as to factors used to impose consecutive sentencing.  Citing *Cleveland*, the court expressed in dicta that there was also no jury trial right to the "analogous" determination under section 654.  (*Black I*, at p. 1264.)  After *Cunningham v. California* (2007) 549 U.S. 270 overruled *Black I* on another ground, our high court reiterated the holding with regard to consecutive sentences but omitted the dicta concerning section 654.  (*People v. Black* (2007) 41 Cal.4th 799, 820-823; see *Oregon v. Ice* (2009) 555 U.S. 160, 168 [consecutive sentencing does not implicate *Apprendi*].)  *Deegan* concluded, "*Black I* states the law of California with respect to the Sixth Amendment and findings of fact for purposes of applying section 654." (*Deegan*, *supra*, 247 Cal.App.4th at p. 549.)  But even if *Deegan* correctly interprets the law after *Cunningham,* the question here is not whether there is a general right to a jury trial on factual issues necessary to apply section 654, but rather whether the Sixth Amendment permits a sentencing judge to find by a preponderance of the evidence that the basis for a defendant's conviction was something other than what was found by the jury.

10

inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts 'which the law makes essential to the punishment,' [citation] and the judge exceeds his proper authority."  (*Id.* at pp. 303-304; see *id.* at p. 306 ["*Apprendi . . .* ensur[es] that the judge's authority to sentence derives wholly from the jury's verdict."].)

Whatever may be said of a sentencing court's gap-filling ability to make findings with regard to factual issues left *unresolved* by the jury, it is a far different matter where the trial judge utilizes a lesser standard of proof to make factual findings that *conflict* with the jury's conclusion.  Here, the basis for Carter's first degree murder conviction is clear.  The verdict of "not true" on the firearm use enhancement reflects a unanimous finding by the jury that the prosecution did not prove beyond a reasonable doubt that Carter committed a premeditated first degree murder by shooting the victim.  Thus, when the jury nonetheless convicted Carter of first degree murder, it necessarily relied on a felony-murder theory.  A murder conviction based on a felony-murder theory arises out of the same act or course of conduct as the underlying felony for section 654 purposes, precluding multiple punishments.  To allow a sentencing judge to impose multiple punishments by finding facts on a preponderance-of-the-evidence standard that are

11

*inconsistent* with the "facts reflected in the jury verdict" would raise serious Sixth Amendment concerns.[7]

This second round of inconsistent factual findings by the sentencing judge may also raise double jeopardy issues. It is certainly true that where a defendant has been convicted on some counts and acquitted on others, double jeopardy principles do not prevent a sentencing court from using facts underlying an acquitted count in deciding what sentence to impose on a convicted count. (See *United States v. Watts* (1997) 519 U.S. 148, 154; *Towne*, *supra*, 44 Cal.4th at p. 87.) But the inconsistent finding by the trial court here does not merely assist in selecting the length of the sentence to be imposed for a crime (first degree murder) of which defendant was properly convicted by a jury. (*Watts*, at p. 155, citing *Witte v. U.S.* (1995) 515 U.S. 389, 401.) Instead it changes the factual basis for the murder conviction from a theory the jury accepted (felony murder) to one it implicitly but necessarily rejected (premeditated murder). Where the jury has already *determined* that the prosecution did not prove a premeditated first degree murder beyond a reasonable doubt, on what basis can the defendant be exposed to a second hearing at which a different trier of fact applying a lesser standard will decide the same question?

---

[7]    For example, an *Apprendi* issue was avoided in *Towne*, *supra*, 44 Cal.4th 63 because the defendant had no right to a jury trial on his record of prior convictions, rendering the defendant eligible for the upper term based on that aggravating circumstance alone. (*Id.* at pp. 83, 86; see generally *Almendarez-Torres v. U.S.* (1998) 523 U.S. 224.) It was in *this* context that the court could further consider evidence the jury had implicitly found not true through its acquittals on other counts. (*Towne*, at pp. 83, 87-88.) No such exception to the *Apprendi* rule is cited here.

C

In my view, California case law has traced a reasonably clear line defining a sentencing court's ability to make factual findings necessary to the application of section 654. Where the jury's verdict does not resolve a factual issue, the trial court may make findings not inconsistent with the verdict. But at the same time, the court may not find facts by a lesser standard of proof that have the effect of "countermand[ing]" the verdict by changing the basis for the defendant's conviction as determined by the jury. (*Bradley*, *supra*, 111 Cal.App.4th at p. 770.) The trial court's conclusion here—that Carter committed a deliberate and premeditated murder—had precisely that effect, and therefore exceeded the court's power. I would, accordingly, modify the judgment as to Carter, staying the punishment on count 4 for attempted robbery.

DATO, J.

13